167 So.2d 780 (1964)
SPRINGFIELD FIRE AND MARINE INSURANCE COMPANY, Appellant,
v.
Brady B. BOSWELL and Dora Lee Boswell, Appellees.
No. F-87.
District Court of Appeal of Florida. First District.
October 6, 1964.
Beggs, Lane, Daniel, Gaines & Davis, Pensacola, for appellant.
Robinson & Roark, Pensacola, for appellees.
WILLIS, BEN C., Associate Judge.
The appellant-defendant sustained an adverse summary final judgment rendered in the trial court in behalf of the appellee-plaintiffs who were the insureds in a fire insurance policy issued by the appellant company. The trial judge was confronted with pure questions of law. On this appeal *781 it is asserted that he failed to apply the proper legal principles, which, if they had been recognized, would have resulted in a judgment favorable to the appellant-defendant.
The parties will be referred to as they appeared in the trial court. The plaintiffs Boswell were the owners of real estate which included a frame, one-story dwelling house. On November 16, 1959, defendant issued its standard fire insurance policy for $6,000 on the dwelling for a one-year period. The insureds named in the policy were the plaintiffs as owners and a Mr. and Mrs. Alford who were shown as purchasers under a contract of sale. The plaintiffs paid the required premium. The Alfords soon defaulted in their obligations on the contract and their rights in the property were extinguished by a quit claim deed to the plaintiffs. On May 25, 1960 an endorsement to the insurance policy was issued showing the Alfords no longer had an insurable interest in the property.
On July 1, 1960 the plaintiffs Boswell entered into a written contract of sale and purchase of this property with Mr. and Mrs. James W. Brown, who went into possession of the premises. The purchase price was $12,500 of which $500 was paid in cash with the balance to be paid in monthly installments with interest on the unpaid balance. The contract required the purchasers to procure fire insurance of at least $7,500 for the benefit of both the sellers and purchasers. The Browns procured insurance in the sum of $15,000 with a company not a party to this suit.
On August 7, 1960, well within the policy period, the insured premises were totally destroyed by fire. The following day the plaintiffs reported the loss to defendant's agent.
On November 10, 1961, fifteen months after the fire plaintiffs Boswell executed and delivered to the Browns a warranty deed conveying the subject property, but specifically reserved to themselves their claim under the policy issued by defendant. In return for the deed, the plaintiffs were paid $12,000.00 from the proceeds of the policy which had been procured by the Browns and in which the Boswells were also shown as being insureds.
It was more than a year after the fire that any settlement of any kind was made by either company which had insured the risk. It was only a few days before the delivery of the deed from the Boswells to the Browns that the Browns' insurer settled with the Browns and Boswells the claim against it. It paid the full $15,000 face amount of the policy. The defendant insurer has of course made no settlement, hence this lawsuit.
The plaintiffs instituted this action against the defendant insurer in January, 1962 in which they sought to recover the full face amount of the policy, interest and attorneys' fees. The defendant answered denying the alleged indebtedness, and in substance asserted that under the circumstances of the contract of sale of the property by plaintiffs, the payment of the proceeds of the policy issued to the Browns, and the conveyance of the title to the property in question the plaintiffs Boswell had no loss the defendant is obligated to indemnify.
After certain discovery procedures, including the taking of the deposition of Mr. Boswell, each party moved for a summary judgment. Ultimately the Court granted the motion in behalf of the plaintiffs and in the judgment made the following findings: "* * * the insured improvements were a total loss; * * * the plaintiffs were at the time of the loss the vendors holding title subject to the contract of sale, the policy in question was in full force and effect and there is no indication of any fraud or provision in the policy itself prohibiting additional insurance; that had there been no contract of sale in existence at the time of the loss and both policies were in full force and effect at said time, plaintiffs, being the insureds, would be entitled to right of recovery; that the policy in question was issued *782 in accordance with the valued policy statute * * *".
The plaintiff was awarded the $6,000 face amount of the policy, interest on same, costs and attorneys' fees.
The questions presented may be condensed and summarized into the following query:
May a vendor in a sale-purchase contract of real property who has been paid the full purchase price from proceeds of a fire insurance policy required by his contract, also recover on a fire insurance policy, insuring only the vendor, to the extent of the face amount of the policy, when the unpaid purchase price at the time of a total loss of the insured premises by fire exceeded such face amount?
This Court has already approved, in the Rutherford case,[1] the so-called New York Rule to the effect that, barring any agreement to the contrary, a fire insurance policy is a contract to insure against fire loss, and its premiums are assumed to represent the fair equivalent of the obligation contracted for by the insurer without the knowledge of collateral remedies. The New York rule is said to be preferred to the minority or Wisconsin Rule which regards a contract of fire insurance as a contract of indemnity and where no pecuniary loss has been sustained there can be no recovery. Both of these rules are fully discussed with supporting citations in Rutherford, and such will not be repeated here.
In Rutherford we held that the allegation made by plaintiff in her complaint against the defendant fire insurer that she held a vendor's lien to secure the unpaid portion of the purchase price was sufficient as an allegation of her insurable interest in the premises destroyed by fire and that she was not required to allege and prove actual loss where she sought only to recover the amount of the unpaid portion of the purchase price at time of the loss, which was less than the face amount of the policy. In arriving at that conclusion we applied the above mentioned New York Rule, and also held that a vendor's lien gives the vendor an "insurable interest" in the property being sold so as to come within the class of persons who may procure an enforceable contract of insurance against loss of such property, as defined in Section 627.01041, Florida Statutes, F.S.A.[2] We were also impressed with the pertinency of our Valued Policy Law, Section 627.0801, Florida Statutes, F.S.A., which provides, inter alia, that in the event of a total loss by fire of a structure, the liability of the insurer of such peril shall be the amount of money for which the property was insured as specified in the policy and for which premium has been charged and paid.[3]
The Rutherford case has committed us to the doctrine that one who holds an insurable interest in property insured against fire at the time of the total loss may recover to the extent of the value of such interest as of the time of loss provided it does not exceed the full face of the policy, and that it is not necessary to allege or prove an ultimate actual loss or impairment of security.
We also recognized that under the New York Rule there are two schools of thought on the collateral issue of the measure of the insured's recovery against the fire insurer. One school, which we will call the "face value rule" or "Minnesota Rule" is expressed in Board of Trustees of First Congregational Church of Austin v. Cream City Mutual Ins. Co., 255 Minn. 347, 96 N.W.2d *783 690 (1959), in which it was declared that, in case of a valued policy, "the insured may recover the full value of his policy, even though the value of his actual interest is less than the amount of the insurance". In brief, this holds that where the insured has an insurable interest at the time of loss and there is a total loss, recovery may be made of the full face amount of the insurance contract even though the clear, demonstrable actual value of the insurable interest is less than such amount.
The other school, which we will call the "insurable interest value rule" or "North Dakota Rule" is set forth fairly in Koppinger v. Implement Dealers Mutual Ins. Co., 122 N.W.2d 134 (N.D., 1963), which held that the measure of recovery of an insured holder of a vendor's lien in the destroyed premises "is the value of his interest at the time of loss not exceeding the amount of coverage provided by the policy."
In Rutherford we were not compelled to choose between these two rules of measure of recovery because the plaintiff vendor only sought to recover the unpaid portion of the purchase price which was substantially less than the face value of the policy. It was stated, however:
"Nevertheless, by way of pure obiter dictum, we comment that we are impressed with the justice of the North Dakota view and are inclined to favor it, although we realize that a strong argument could be made for the Minnesota view on the basis of the Florida valued policy law * * *."
In the case sub judice we are not required to go beyond what has already been said and approved in Rutherford and cases cited therein to find a basis for affirmance of the judgment rendered. Even the North Dakota (insurable interest value) rule would allow recovery of the value of the insured's interest in the property, not exceeding the amount of coverage, at the time of the loss. When the total loss occurred here, the unpaid balance of the purchase price was $12,000 and exceeded the face amount of the policy.
However, at the time of filing the suit in this case the plaintiff had been paid $12,000, the prior unpaid principal on the purchase price, and this was from the proceeds of a fire insurance policy which covered the plaintiffs' interest in the insured property. Thus, the posture of the plaintiffs is such that by prevailing in this case they appear to stand to enrich themselves by some several thousand dollars beyond what they would have received from the property if the fire had not occurred. It is urged that this constitutes their insurance more than indemnity for a peril and results in a mere wager. It is earnestly contended that such a circumstance is so contrary to public policy that the result reached cannot be sanctioned or countenanced.
At first glance it would appear that an affirmance would result in approval of an unconscionable profit from a destructive fire. Certainly we would recoil from pronouncing or applying any rule which would lead to unjust enrichment at the expense of innocent parties. On deeper consideration we find that such is not the case here.
The insurance policy in question has a clause designated "other insurance", which provides: "other insurance may be prohibited or the amount of insurance limited by endorsement attached hereto". There is no such endorsement of limitation. Thus, there was no impediment to the obtaining of other insurance on the same premises by anyone having a proper insurable interest. In addition there is specific permission granted in the policy "for other insurance".
The Valued Policy Law, Sec. 627.0801, Florida Statutes, F.S.A. sets the amount payable when there is a total loss. "Its principal object and purpose is to fix the measure of damages in case of loss total, or partial; and, to this end, it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write *784 it therein."[4] When there are several permissible concurrent policies of fire insurance and there is a total destruction by fire of the insured premises, the aggregate amount of the insurance written, or the sum of the face amounts in the policies for this peril, is conclusive as to the value of the property insured and the true amount of the loss and measure of damages when so destroyed.[5] Each insurer is liable for the full amount of his policy, provided, of course, there is no fraud or other conduct of the insured which would constitute a valid defense to an action to recover for the loss.
Undoubtedly an important object of the statute is also to simplify and facilitate prompt settlement of insurance claims when a total loss occurs. It serves to remove what would otherwise be a very troublesome and difficult issue to resolve either between the parties by negotiation or by the courts in litigation. This issue is the money loss sustained which the insurer must indemnify. The value specific property had is hard to ascertain after its destruction because the usual evidence relied upon for such assessment is unavailable. The difficulties and uncertainties thus created were productive of suspicions of and opportunities for false or exaggerated claims on the one hand and for accusations, minimizations and oppressions on the other. Thus vexatious contests on this issue would persist when the best interests of all demanded prompt settlement and relief from the loss. A solution to this is found in the statute which in effect requires the parties to ascertain and agree in advance what the value is and in the case of total loss by the insured peril this amount shall be paid as liquidated damages.[6]
This is not an unfair scheme, as the insured is stating the limits of his recovery and at the same time the insurer is basing his premium charges on the extent of his maximum exposure. When the total loss occurs neither can contend the value of the destroyed property is any different from what they had previously specified. When multiple policies are permissible, as here, the same principles apply. The aggregate liability is the total of the various values specified and for which an appropriate premium has been paid.
In the case here, the defendant agreed that if there should be a total loss by fire of the insured premises, it would pay plaintiffs $6,000 provided they had an insurable interest in the property at the time of loss. What collateral or additional agreements plaintiffs had with regard to their interests in the property, so long as they retained an insurable interest, could neither help nor hurt the insurer so long as there was no change increasing the risk without the insurer's consent. When the purchaser procured the $15,000 coverage, the aggregate loss to all parties which would be sustained in the event of a total destruction by fire of the insured premises became fixed at $21,000 and the total amount became payable.
We are not required to adjudicate what rights or equities may have arisen in behalf of the purchasers if the plaintiffs had been paid the proceeds of the policy involved in this suit prior to the fulfillment of the purchase contract. Whatever rights may have existed in them were specifically relinquished in favor of the plaintiffs when the purchasers accepted the deed to the property in which was reserved the rights under the subject policy. We deem this circumstance to be significant. Neither the defendant nor the Browns' insurer were entitled to any abatement of their liability for the full amount of risk which the insureds had purchased and paid for. If each insurer had made a prompt remittance of the sum it had promised to pay upon the happening of the contingency which would mature the liquidated *785 obligations, then the vendor and vendee insureds could have more readily adjusted themselves to the loss which had occurred.
One of the very mischiefs the Valued Policy Law sought to suppress arises in this case, and that is the haggling over the measure of liability. The mischief is more irksome when multiple insurers become involved and one or more seeks some escape from full response.
When the Browns' insurer did make payment, over a year after the loss, and the parties to the sale-purchase contract moved to settle the affairs between themselves, the defendant had refused to pay under the policy in question. At that time all the plaintiffs had was a claim against defendant which could be materialized only through a successful law suit.
It is also to be noted that in this case the plaintiffs have not been totally unsacrificing in their dealings. There seems to have been some $960 interest which had accrued on the unpaid balance of the purchase price which the plaintiffs implicitly waived when they delivered their warranty deed. Also the plaintiffs assumed the full burden and the risk of pursuing the remedies against the defendant and such has been fully contested. There was in addition the burden of delay in disposition of the various matters pertaining to the property. Considering all of these circumstances, the success of the plaintiffs in achieving recovery in this case is not the undeserving windfall it may have seemed upon initial superficial observation.
We are not unmindful that overvaluation in insurance coverage has its unwholesome aspects. Perhaps it would be wise to enact laws to prevent it, but that is a matter for the legislature and not the courts. The insurers themselves have the right to prohibit or limit additional insurance on the same subject and risk. The defendant here chose not to limit but on the contrary specifically permitted additional insurance.
The conclusions reached here are in full accord with all that we held in Rutherford, supra, and does not disavow the obiter dictum there on our preference for the North Dakota (insurable interest value) rule of measure of recovery when the insurable interest consists of a lien or the equivalent equity for unpaid purchase money.
It is our view that when a total loss occurs because of a peril insured against, it becomes the obligation of the insurer, absent other defenses, to pay to an insured whose insurable interest is a purchase money lien on the destroyed property at least the full amount as of the date of the loss, of all unpaid purchase price moneys arising out of the sale of the property, but not to exceed the face amount of the coverage specified in the policy. We do not find that a subsequent full payment of the purchase price by or for the vendee or by another insurer relieves or reduces such liability.
The evil of the chance possibility of an ultimate collection by the lienor of the full purchase price from his vendee and also the insurance indemnity for the unpaid sum at time of loss does not outweigh the disruptions and harassments closely associated with delays in settlement of fire loss claims
As the trial judge set forth in his findings, there is no suggestion of fraud. The record further shows no inkling of any intentional destruction or any other circumstance which would render the plaintiffs' claim for fire loss anything but in perfect good faith. To reverse the trial judge would constitute a serious and, we think, unsupportable erosion of the Valued Policy Statute.
The authorities and arguments of appellant set forth in its main briefs and in the supplemental brief submitted pursuant to the Court's request have been carefully examined and considered, but we are not persuaded that the trial judge erred.
Accordingly, the judgment appealed is
Affirmed.
CARROLL, DONALD K., Acting C.J., and WIGGINTON, J., concur.
NOTES
[1] Rutherford v. Pearl Assurance Company, Fla.App., 164 So.2d 213.
[2] The seller in a contract of sale and purchase of real estate has an interest in the property involved almost identical to that of one who has conveyed the property subject to a vendor's lien. See Mannion v. Owen, Fla.App. 1960, 121 So.2d 816.
[3] The statute provides an exception in case of a change increasing the risk without insurer's consent, but such circumstance is not involved here or in the Rutherford case.
[4] Hartford Fire Insurance Co. v. Redding, 47 Fla. 228, 37 So. 62, 67 L.R.A. 518, 110 Am.St.Rep. 118 (1904).
[5] Vol. 18 Fla.Jur. (Sec. 357, Insurance).
[6] 18 Fla.Jur. (Insurance, Sec. 355) p. 260; American Ins. Co. v. Gentile Bros. Co. (1960, C.A.Fla.) 109 F.2d 732, cert. den. 310 U.S. 633, 60 S.Ct. 1075, 84 L.Ed. 1403.