446 So.2d 1093 (1984)
Wendy M.L. COOPER, Appellant,
v.
Angie ALFORD, Appellee.
No. AQ-372.
District Court of Appeal of Florida, First District.
February 8, 1984.
Rehearing Denied March 15, 1984.
George E. Day, Fort Walton Beach, for appellant.
Siegfried F. Kessler of Smith, Grimsley, Remington, Kessler & Simpson, Fort Walton Beach, for appellee.
*1094 MILLS, Judge.
Cooper appeals from a final judgment finding that her husband's estate is not entitled to proceeds from an insurance policy in which he was a loss-payable mortgagee. We reverse.
The Coopers owned property with a partially completed house on it. They procured a fire and extended coverage insurance policy from Allstate Insurance Company (Allstate) for $20,000 on the dwelling and $4,000 on its contents. Several months later, the Coopers sold the house to Alford who gave the Coopers a promissory note and a purchase money mortgage as security for a portion of the purchase price.
Alford then procured a homeowner's policy from United States Fidelity & Guaranty Insurance Company (U.S.F. & G.) insuring the property for $71,000. As required by the mortgage deed, William Cooper was made a loss-payable mortgagee. He was designated in the mortgagee clause of the U.S.F. & G. policy "second mortgagee as interest may appear." Two other mortgagees were also designated loss-payees.
After selling the property to Alford, the Coopers renewed the Allstate policy. Alford did not know about this renewal. When the house was totally destroyed by fire, Allstate paid the Coopers $16,800, the approximate amount of the Coopers' interest as mortgagees at the time of the loss.
Later, U.S.F. & G. issued a check for $71,000 payable to Alford, Alford's attorney, William Cooper, and the other two loss-payable mortgagees. William Cooper would not endorse the check over to Alford so Alford brought suit to compel endorsement. William Cooper died and his wife, Wendy, was substituted in the suit as personal representative of his estate.
The parties entered into a court approved stipulation whereby all payees would endorse the check from U.S.F. & G. and $20,000 of the proceeds would be held in escrow for the benefit of the prevailing party. The trial court found for Alford. The court authorized release of the $20,000 to Alford and directed Cooper to give Alford the promissory note and a satisfaction of mortgage.
Cooper contends that her husband's estate is entitled to the proceeds of the U.S.F. & G. policy to the extent of her husband's interest as a mortgagee at the time of the loss. She asserts that the interest of a loss-payable mortgagee is determined at the time of the loss and, in this case, was not diminished by subsequent events. Alford contends that payment to the Coopers under the Allstate policy of a sum equal to their interest as mortgagees extinguished any interest Cooper had in the U.S.F. & G. proceeds.
We held in Springfield Fire and Marine Insurance Company v. Boswell, 167 So.2d 780 (Fla. 1st DCA 1964), that a vendor in a sale-purchase contract for real property is entitled to the proceeds from a fire insurance policy in which he is the named insured regardless of the fact that the vendor has received an amount equal to the purchase price from the proceeds of a policy procured by the vendee in which both vendee and vendor were named insureds. Here, in a situation nearly converse to Boswell, it would be inconsistent to hold that the interest in the proceeds is extinguished. Absent an agreement or provision to the contrary, a loss-payable mortgagee with interest as may appear may recover the amount of that interest at the time of the loss despite recovery under the loss-payable mortgagee's separate policy in which he is the named insured.
South Carolina Insurance Company v. Pensacola Home & Savings, 393 So.2d 1124 (Fla. 1st DCA 1981), does not compel a different result. That case held that a loss-payable mortgagee's interest in the proceeds of the policy in which he is designated loss-payee is reduced by the amount realized by the mortgagee from the proceeds of a foreclosure sale. The purpose of a foreclosure sale, however, is to reduce or extinguish the mortgage debt. Here, the proceeds from the insurance policy taken out by the mortgagee while still owner of the property were never intended to *1095 satisfy the mortgagor's obligation to the mortgagee.
Accordingly, Mr. Cooper's interest in the proceeds of the U.S.F. & G. policy was not diminished when Allstate paid the Coopers under the Allstate policy. Mr. Cooper was therefore entitled to receive from the proceeds of the U.S.F. & G. policy the amount of his interest as it appeared at the time of the loss.
We acknowledge that the mortgagee will receive more in cumulative insurance proceeds than was owed by the mortgagor at the time of the loss. But a contrary result would mean that the mortgagor would receive a windfall simply because the mortgagee had previously obtained a separate policy in which the mortgagor was neither a named insured nor a loss-payee. Hardly an equitable result.
In view of our disposition of this appeal, we do not consider the second issue raised by Cooper.
Reversed and remanded for proceedings consistent with this opinion.
SHIVERS, J., concurs.
ZEHMER, J., dissents with opinion.
ZEHMER, Judge, dissenting.
I respectfully dissent. The judgment of the court below should be affirmed on the authority of South Carolina Insurance Co. v. Pensacola Home & Savings Association, 393 So.2d 1124 (Fla. 1st DCA 1981). Springfield Fire & Marine Insurance Co. v. Boswell, 167 So.2d 780 (Fla. 1st DCA 1964), is clearly distinguishable from the facts of this case and does not justify ordering that appellant Cooper receive double payment of the fixed mortgage debt owed to him by appellee Alford.
The facts are essentially undisputed. Cooper owned property with a partially completed house on it and obtained a fire insurance policy from Allstate Insurance Company in the face amount of $20,000 for the dwelling and $4,000 on its contents. Cooper sold the property to Alford and took a promissory note and purchase money mortgage from Alford as security for a portion of the purchase price. The mortgage required Alford "to carry insurance against fire on the building on said land for not less than $17,800 approved by mortgagees with standard mortgage loss clause payable to mortgagees." In accordance therewith, Alford purchased a fire insurance policy from United States Fidelity & Guaranty Insurance Company (USF & G) insuring the entire property for $71,000. Cooper was designated in the mortgagee clause of the USF & G policy as "second mortgagee as interest may appear," along with two other mortgagees similarly designated as loss-payees. After the sale of the property to Alford, Cooper, without the knowledge of Alford, purchased additional fire insurance coverage on the property by renewing the existing Allstate insurance policy in the same face amount for a period of one year from August 7, 1981.
On September 5, 1981, the improvements on the property were totally destroyed by fire. Cooper filed a claim and Allstate paid Cooper $16,800, the amount owed to Cooper as mortgagee at the time of the loss. Thereafter, Alford filed a claim with USF & G for more than $90,000 and USF & G issued its check for $71,000 (the face amount of its policy) payable to Alford and his attorney, to Cooper, and to the remaining two loss-payable mortgagees. Cooper refused to endorse the check over to Alford, so Alford brought this suit to compel the endorsement. Pursuant to stipulation, the USF & G check was negotiated and $20,000 of the proceeds wer held in escrow for the benefit of the prevailing party to this litigation.
The trial court, ruling in Alford's favor, recited in the final judgment in part:
8. It is undisputed that the Defendant [Cooper] has received from their insurance company a payment sufficient to pay the note and mortgage due and owing from the Plaintiff [Alford].
* * * * * *
Upon the facts set forth hereinabove, the only legal issue for the Court's determination appears to be whether or not a *1096 loss payee vested with rights under an insurance policy is entitled to payment thereunder, if by some other means the underlying debt has been paid.
The Court finds, upon the facts and issues of law set forth herein, that when the Defendant received payment from her insurance company in an amount sufficient to satisfy the note and mortgage due and payable by the Plaintiff, the debt giving rise to the insurable interest of the Defendant was thereby extinguished and the Defendant, without an insurable interest, has no enforceable claim against any part of the proceeds received from Plaintiff's insurance company, USF & G.
The judgment entered by the trial court was clearly required under the rule approved in South Carolina Insurance Co. v. Pensacola Home & Savings Association, supra. At issue in that case was the amount of money Pensacola Home & Savings Association was entitled to recover for the loss of mortgaged property under a fire insurance policy protecting Pensacola Savings as the designated loss-payable mortgagee "as interest may appear," 393 So.2d at 1125. The face amount of the policy was $21,000 and the mortgage debt exceeded $22,000 at the time a fire damaged the insured property. After the fire, however, Pensacola Home & Savings realized $14,000 from the foreclosure sale of the property. Pensacola Savings contended it was entitled to the full $21,000 insurance proceeds because the $22,000 debt secured by the property at the time of the fire was in excess of that amount. The insurance company, on the other hand, contended that Pensacola Savings was entitled to recover only the amount due under the note and mortgage, less the amount it realized from the foreclosure sale. Reversing the trial court, we held that the insurance company's position was the correct measure of mortgagee's insurable interest in the policy proceeds, stating the rationale of the decision as follows:
Where a fire loss occurs and a loss-payee is thus vested with rights under the insurance policy, subsequent partial or full extinguishment of the debt giving rise to the insurable interest will reduce the loss-payee's interest in the proceeds to the extent that the debt has been satisfied. Rosenbaum v. Funcannon, 308 F.2d 680 (9th Cir.1962); Lutheran Brotherhood v. Hooten, 237 So.2d 23 (Fla. 2nd DCA 1970). The underlying policy behind this result is best expressed as follows:
"The creditor's interest in the insurance proceeds is recognized as security for the payment of the debt. The insurance is an alternative source of payment and once the debt is paid by some other means any right to the insurance is thereby extinguished. Equity requires that subsequent events such as payment of the underlying debt not be ignored when the court distributes the insurance proceeds." Calvert Fire Insurance Co. v. Environs Development Corp., 601 F.2d 851, 856 (5th Cir.1979).
Id., at 1125.
In this case, Cooper received sufficient payment from the Allstate policy to fully satisfy the amount of his secured mortgage debt. At the time of the fire, Cooper had an insurable interest in the destroyed property only in the sense of security for payment of the mortgage debt; he did not have an insurable interest in the total value of the property itself. Thus, under the rationale in South Carolina Insurance Co., supra, to the extent that the debt owed Cooper was partially or fully extinguished by means other than the insurance proceeds of the USF & G policy under which Cooper was insured as a loss-payable mortgagee as his "interest may appear," the satisfaction of his debt, even though after the fire, extinguished his legal right to recover additional proceeds of that policy. Under South Carolina Insurance Co., supra, a mortgagee's "interest" as a secured creditor is determined at the time of the fire loss, but the amount legally due him from the proceeds of the policy must be determined as of the time of payment.
*1097 The majority has apparently misconceived the holding in Springfield Fire & Marine Insurance Co. v. Boswell, supra, and has misapplied that decision to the facts in this case. In Springfield, Boswell, as the named insured, obtained insurance coverage from Springfield on property owned by him. Thereafter, he sold the property to the Browns and took a mortgage note from them. The property was destroyed by fire, and eventually the purchasers paid Boswell the amount of the mortgage and received a warranty deed free and clear of the mortgage debt. As part of that transaction, Boswell, who had remained the named insured on the policy, specifically reserved to himself the right to pursue the claim against Springfield, which had refused to pay anything under its policy. We affirmed Springfield's liability on the policy notwithstanding that Boswell had already received payment of the mortgage debt, reasoning that the policy was not one for indemnity, but an unconditional promise to pay for the loss of the property due to fire and that Springfield could not avoid liability on the ground that Boswell had already been fully indemnified for the loss through payment from the purchasers.
In Springfield, unlike the instant case, the issue was not which party, as between an insured owner and an insured loss-payable mortgagee, should recover the proceeds of the policy; rather, the issue was whether the insurance company was liable for the face amount of its policy to an insured having an interest in the property exceeding the face amount at the time of the fire. That case deals only with the legal obligation of the insurance company to pay the face amount of its policy in the event of a total loss of property due to fire. The opinion explicitly declines to reach the question presented in this case as to which of the insureds, i.e., a purchaser holding ownership of the property at the time of the fire or a vendor holding a security interest in the policy proceeds as mortgagee, is entitled to the policy proceeds after satisfaction of the mortgagee's debt. Accordingly, we stated in 167 So.2d at 784-85:
In the case here, the defendant agreed that if there should be a total loss by fire of the insured premises, it would pay plaintiffs $6,000 provided they had an insurable interest in the property at the time of loss. What collateral or additional agreements plaintiffs had with regard to their interests in the property, so long as they retained an insurable interest, could neither help nor hurt the insurer so long as there was no change increasing the risk without the insurer's consent. When the purchaser procured the $15,000 coverage, the aggregate loss to all parties which would be sustained in the event of a total destruction by fire of the insured premises became fixed at $21,000 and the total amount became payable.

We are not required to adjudicate what rights or equities may have arisen in behalf of the purchasers if the plaintiffs had been paid the proceeds of the policy involved in this suit prior to the fulfillment of the purchase contract. Whatever rights may have existed in them were specifically relinquished in favor of the plaintiffs when the purchasers accepted the deed to the property in which was reserved the rights under the subject policy. We deem this circumstance to be significant. Neither the defendant nor the Browns' insurer were entitled to any abatement of their liability for the full amount of risk which the insureds had purchased and paid for. If each insurer had made a prompt remittance of the sum it had promised to pay upon the happening of the contingency which would mature the liquidated obligations, then the vendor and vendee insureds could have more readily adjusted themselves to the loss which had occurred.
* * * * * *
When the Browns' insurer did make payment, over a year after the loss, and the parties to the sale-purchase contract moved to settle the affairs between themselves, the defendant had refused to pay under the policy in question. *1098 At that time all the plaintiffs had was a claim against defendant which could be materialized only through a successful law suit.

(Emphasis supplied.)
This decision does not require, as held by the majority, that a loss-payable mortgagee such as Cooper is entitled as a matter of law to recover the amount of his mortgage debt from the proceeds of Alford's USF & G's policy even though that debt was fully satisfied by proceeds of the Allstate policy in which Cooper was the named insured.
Furthermore, the Springfield decision was based upon the provisions of the Florida Valued Policy Law, section 627.702, Florida Statutes (1981), as they existed in 1964.[1] The court commented in Springfield that the Valued Policy Law was intended to avoid disputes as to valuation in the event of total loss and:
"[T]o this end, it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write it therein." When there are several permissible concurrent policies of fire insurance and there is a total destruction by fire of the insured premises, the aggregate amount of the insurance written, or the sum of the face amounts in the policies for this peril, is conclusive as to the value of the property insured and the true amount of the loss and measure of damages when so destroyed.
167 So.2d at 783-84 (footnotes omitted).
Further commenting that "an important object of the statute is also to simplify and facilitate prompt settlement of insurance claims when a total loss occurs" by removing any doubt as to the agreed value of the specific property totally destroyed, the opinion concludes that "vexatious contests on this issue" are solved by "the statute which in effect requires the parties to ascertain and agree in advance what the value is and in the case of total loss by the insured peril this amount shall be paid as liquidated damages." 167 So.2d at 784 (footnote omitted). Based on this reasoning, we held that Springfield could not escape liability for paying the face amount of its insurance policy upon the assertion that another property insurer had already satisfied the total value of the insured's loss.
But that rationale is not applicable in this case. Section 627.702(3)(a), as amended effective July 3, 1980 (and thus controlling on the dispute in this case), now excludes application of the Valued Policy Law in certain cases, including when:
Insurance policies are issued or renewed by more than one company insuring the same building ... against fire ... and the existence of such additional insurance is not disclosed by the insured to all insurers issuing such policies... .
An obvious purpose of this amendment is to require that an insured initially provide full disclosure concerning all insurance on the insured property so that the insurers and other interested persons can fully evaluate whether the property is overinsured and a person having a limited insurable interest in the property cannot, without disclosure, obtain total insurance substantially in excess of the monetary value of his interest and collect the full policy amount under the Valued Property Law even though far in excess of the value of his interest.
This 1980 amendment promotes the long-standing public policy of voiding insurance contracts for lack of an insurable interest and prevents the "unwholesome aspects" of "over valuation in insurance coverage" noted in Springfield Fire & Marine Insurance Co., supra, at 785. See, § 627.405, Florida Statutes (1981); 30 Fla.Jur.2d, Insurance, § 479, et seq.[2]
*1099 Cooper's failure to notify Alford, and presumably Alford's insurer, USF & G, of his duplicate insurance coverage with Allstate, falls squarely within this exception of section 627.702 and compels that substantial significance be given the trial court's finding that Cooper acted without plaintiff's knowledge.[3] This the majority fails to do.
South Carolina Insurance Co. v. Pensacola Home & Savings Association, supra, cannot be validly distinguished, as the majority attempts to do, on the ground that the loss-payable mortgagee's interest in the policy proceeds in that case was reduced by the amount realized from a foreclosure sale which had as its purpose the reduction or extinguishment of the mortgage debt, while the instant case involves an insurance policy obtained by the mortgagee while owner of the property and that such insurance was never intended to satisfy the mortgagor's obligation to the mortgagee. The majority overlooks the fact that the Allstate policy here involved, though taken out by Cooper while he owned the property, expired after Cooper's conveyance to Alford and was renewed at a time when Cooper's sole insurable interest was that of a secured mortgagee. Thus, at the time of this renewal, Cooper's only insurable interest was security for the debt, and the only purpose sanctioned by law and public policy for his maintaining that insurance was to insure that the mortgagor's debt to Cooper would be fully satisfied in the event of fire loss. The trial court expressly found in the final judgment that Cooper renewed the Allstate policy without informing Alford, and the record does not indicate that Cooper informed USF & G of such additional insurance on the property either. Yet, in 1981 it was clearly Cooper's legal obligation to so inform the owners and their insurers of this additional insurance. § 627.702, Fla. Stat. (1981). Therefore, it seems to me that it is Cooper, not Alford, who is guilty of inequitable conduct by failing to inform of the double coverage, and it is Cooper, rather than Alford, who will receive an inequitable windfall under the majority opinion because the amount of his mortgage debt will be paid twice. As between the two, Alford is clearly entitled to insurance proceeds. I would affirm the judgment of the court below.
NOTES
[1] § 627.0801, Fla. Stat. (1963).
[2] Section 627.405 provides:

(1) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.
(2) "Insurable interest" as used in this section means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment.
(3) The measure of an insurable interest in property is the extent to which the insured might be damnified by loss, injury, or impairment thereof.
[3] It should be noted that appellant has not provided an adequate record on appeal to warrant reversal on any ground other than a pure error of law clearly appearing from the face of the trial court's order inasmuch as no transcript of the trial was made. See, Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1980). Appellee correctly argues that it is unable to respond to appellant's second point on this appeal because of the unavailability of that transcript.