WEBSTER, Judge.
Appellants, Terry and Bonnie Hallcom, seek review of a summary final judgment entered in a declaratory judgment action involving fire insurance coverage. They raise two issues: (1) whether, on the facts of this case, Florida law permits two companies which had insured the same home to prorate their payments for loss by fire based upon the actual amount of the loss, pursuant to “other insurance” clauses contained in the two policies; and (2) whether payment to them by the insurers of the amount owed to them as mortgagees extinguished the mortgagors’ obligation to them. We conclude that the trial court correctly resolved the claims, counterclaims and crossclaims. Accordingly, we affirm.
At some time prior to September 1990, the Hallcoms had purchased a home, executing a note and mortgage which were eventually assigned to Atlantic Mortgage & Investment Corporation (Atlantic). Pursuant to their mortgage, the Hallcoms were required to insure the home, naming Atlantic as loss payee. They complied by obtaining a policy from appellee USAA Insurance Company (USAA). In September 1990, the Hallcoms sold the home to appellees Tommy and Frances Allen. The Allens executed a purchase-money wrap-around mortgage in favor of the Hallcoms. Thus, the Allens were obligated to the Hallcoms, and the Hallcoms remained obligated to Atlantic. Pursuant to their mortgage, the Allens were also required to insure the home, naming the Hallcoms as loss payees. They complied by obtaining a policy from appellee Allstate Insurance Company (Allstate). Although clearly aware that the home was now insured against loss by fire by two policies issued by two different companies, the Hallcoms did not inform either company of that fact. Thereafter, they renewed the USAA policy annually. It is undisputed that neither insurer was aware that two fire policies existed on the home.
Slightly less than three years after the Allens had purchased the home, the home was damaged by fire, resulting in a partial loss. At that time, the face amount of the Allstate policy was $231,000.00, and the face amount of the USAA policy was $109,600.00. Also at that time, the outstanding indebtedness of the Allens to the Hallcoms was $104,-817.75, and the outstanding indebtedness of the Hallcoms to Atlantic was $82,184.17.
Both insurers were notified of the loss, learning for the first time that the home had been insured by two policies. Each policy contained an “other insurance” clause, providing that, if a loss was covered by both that policy and some other, the amount payable under the policy would be the proportion of the loss that the limit of liability under the policy bore to the total amount of insurance covering the property. Pursuant to the “other insurance” clauses, Allstate and USAA determined that their respective shares of the loss, which they concluded amounted to $160,049.95, were approximately 68 percent (or $108,834.00) and 32 percent (or $51,-216.00). They offered to pay the amount owed by the Allens to the Hallcoms jointly to the Allens, the Hallcoms and Atlantic, the intent being thereby to extinguish the Allens’ indebtedness to the Hallcoms and the Hall-coms’ indebtedness to Atlantic; and to pay the remainder to the Allens on account of their loss. This was acceptable to the Allens. However, the Hallcoms rejected the proposal, insisting that they were entitled to the full amount of the Allens’ indebtedness to them ($104,817.75) from Allstate; and that they were entitled to demand that USAA pay to them and to Atlantic jointly the full amount of their indebtedness to Atlantic ($82,184.17). Moreover, the Hallcoms gave notice that, if they did not receive from Allstate the entire amount owed by the Allens to them, they would declare the Allens’ note and mortgage in default, and commence foreclosure proceedings.
The Allens filed an action seeking a declaratory judgment as to the respective parties’ *247 rights and obligations. The response consisted of a bevy of counterclaims and cross-claims. Eventually, all parties filed motions requesting the entry of a summary final judgment. After reciting the undisputed material facts, the trial court’s summary final judgment concludes that Florida law does not preclude Allstate and USAA from prorating payments of the amount determined to reflect the total loss resulting from the fire, pursuant to the “other insurance” clause contained in each policy; and that the Halleoms are not entitled to recover more than the amount of the Allens’ outstanding indebtedness to them. It is from this summary judgment that the Halleoms appeal.
In support of their argument that, notwithstanding the “other insurance” clauses contained in the two policies, Allstate and USAA are prohibited from prorating their payments, the Halleoms rely principally upon section 627.702(2), Florida Statutes (1993), which must be read together with section 627.702(1):
(1) In the event of the total loss of any building, structure, mobile home ..., or manufactured building ... located in this state and insured by any insurer as to a covered peril, in the absence of any change increasing the risk without the insurer’s consent and in the absence of fraudulent or criminal fault on the part of the insured or one acting in his behalf, the insurer’s liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.
(2) In the case of a partial loss by fire or lightning of any such property, the insurer’s liability, if any, under the policy shall be for the actual amount of such loss but shall not exceed the amount of insurance specified in the policy as to such property and such peril.
In Springfield, Fire and Marine Insurance Co. v. Boswell, 167 So.2d 780, 783-84 (Fla. 1st DCA 1964), this court interpreted this statute, known as the “valued policy law,” as follows:
“Its principal object and purpose is to fix the measure of damages in case of loss total, or partial; and, to this end, it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write it therein.” When there are several permissible concurrent policies of fire insurance and there is a total destruction by fire of the insured premises, the aggregate amount of the insurance written, or the sum of the face amounts in the policies for this peril, is conclusive as to the value of the property insured and the true amount of the loss and measure of damages when so destroyed. Each insurer is liable for the full amount of his policy, provided, of course, there is no fraud or other conduct of the insured which would constitute a valid defense to an action to recover for the loss.
(Footnotes omitted.) Such has been held to be true when a total loss is involved, even if one or more of the policies contain “other insurance” clauses. Millers’ Mut. Ins. Ass’n of Ill. v. La Pota, 197 So.2d 21 (Fla. 2d DCA 1967). Arguing by analogy, the Halleoms maintain that, when a partial loss under subsection (2) is involved, each insurer is obliged to pay “the actual amount of such loss,” notwithstanding the presence of “other insurance” clauses in the policies. The trial court concluded, correctly we believe, that the “valued policy law” was unavailing to the Hall-eoms because of section 627.702(3)(a), Florida Statutes (1993), added in 1980. Ch. 80-326, § 1, at 1404, Laws of Fla. That subsection reads:
(3)The provisions of subsections (1) and (2) do not apply when:
(a) Insurance policies are issued or renewed by more than one company insuring the same building, structure, mobile home, or manufactured building, and the existence of such additional insurance is not disclosed by the insured to all insurers issuing such policies.
The Halleoms contend “that subsection (3)(a) was enacted to prevent fraudulent concealment of multiple insurance policies issued to one insured and protecting a single insurable interest.” However, such an argument is at odds with the plain language of subsection (3)(a). That subsection says noth *248 ing about either “insurable interests” or “fraudulent concealment.” In fact, “fraudulent” conduct was already specified in subsection (1) as activity which would preclude application of the “valued policy law.” Moreover, while it is true that the subsection refers to “the insured,” the Hallcoms’ argument overlooks section 1.01(1), Florida Statutes (1993) (“Li]n construing these statutes and each and every word, phrase, or part hereof, where the context will permit ... [t]he singular includes the plural and vice versa”). When, as here, the language of a statute is clear, there is no reason to resort to rules of construction. The statute must be given its plain and ordinary meaning. E.g., Streeter v. Sullivan, 509 So.2d 268 (Fla.1987); A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157 (1931). In our opinion, because the fact that the home was insured by both Allstate and USAA was not disclosed to those insurers, the clear language of subsection (3)(a) precludes application of the “valued policy law.” Accordingly, there is no valid reason why the “other insurance” clauses contained in the two policies should not be given effect as written.
The Hallcoms also argue that reversal is required on their first point by this court’s decision in Cooper v. Alford, 446 So.2d 1093 (Fla. 1st DCA 1984), which they claim “refused to apply the (3)(a) exception to Florida’s valued policy law to a nearly identical situation involving two separate insurance policies obtained by different parties which ensured [sic] different interests in the property.” However, the “valued policy law” is not even mentioned in the opinion of the Cooper majority. That is understandable, considering that neither insurer appears to have ever been a party to the litigation. Instead, it appears that, for whatever reason, each insurer voluntarily paid the full amount demanded.
The Hallcoms also rely upon the Cooper decision to support their contention that payment by the insurers to them of the amount owed by the Allens cannot extinguish the Allens’ indebtedness to them. Specifically, they argue that Cooper precludes Allstate and the Allens from claiming that the sum paid by USAA toward satisfaction of the Hallcoms’ mortgage indebtedness to Atlantic also partially satisfies the Allens’ mortgage indebtedness to them. However, we conclude that Cooper is factually distinguishable and, therefore, that it does not control the outcome here.
In Cooper, the Coopers owned a partially completed house as to which they had procured fire insurance from Allstate in the amount of $20,000.00. Shortly thereafter, the Coopers sold the house to Alford, taking back a note and mortgage as security for a portion of the purchase price. As required by the mortgage, Alford obtained fire insurance from U.S.F. & G. (in the amount of $71,000.00), naming the Coopers as loss payees. After the sale, and without Alford’s knowledge, the Coopers renewed the policy they had with Allstate. (There is no indication whether Allstate and U.S.F. & G., or either of them, knew that the house was the subject of two policies.) When the house was later totally destroyed by fire, Allstate paid the Coopers $16,800.00, which was the amount of the Coopers’ interest as mortgagees; and U.S.F. & G. tendered a check for its policy limits, made jointly payable to Alford and the Coopers, among others whose interests are not relevant here. The Coopers refused to endorse the U.S.F. & G. check over to Alford. They claimed that, notwithstanding their receipt of the payment from Allstate for their interest as mortgagees, they were entitled to receive a like amount from the proceeds of the U.S.F. & G. check. The trial court ruled in Alford’s favor, and directed that the Coopers surrender the note and execute a satisfaction of the mortgage.
On appeal, this court reversed. It is clear that the reversal was based upon what the court considered to be equitable considerations. Because both insurers had paid as provided by their respective policies, without any attempt at proration, the amount available to be distributed between the Coopers and Alford exceeded their combined actual losses. One or the other would receive more than actual losses. Were Alford to prevail, he would receive $71,000.00, notwithstanding the fact that, when he obtained insurance, his anticipation was that he would receive only $71,000.00 less the amount owed to the Coopers (which, at the time of the loss, was $16,800.00). On the other hand, were the Coopers to prevail, they would receive what they had anticipated when they required Al *249 ford to obtain insurance and also renewed the Allstate policy, for which they had paid the premiums ($16,800.00 from Allstate, and an additional $16,800.00 from U.S.F. & G.). Therefore, the court concluded that, as between the two, the Coopers were equitably more deserving than was Alford.
The present case, however, includes the additional fact that, because of section 627.702(3)(a) and the “other insurance” clauses, Allstate and USAA were entitled to prorate their payments, so that only the combined actual losses of the parties were required to be compensated. Thus, the question as between the Hallcoms and the Allens is not which party is equitably more deserving to receive more than actual losses. Instead, the question is whether the Allens should receive the actual losses they sustained, and which they intended to insure against when they purchased the Allstate policy; or whether, at the expense of the Allens, the Hallcoms should receive significantly more than their actual losses. Indeed, the logical result of the Hallcoms’ argument is that, notwithstanding the undisputed fact that the Allens sustained some $55,000.00 in losses, they should receive only some $4,000.00; whereas the Hallcoms, whose actual loss (including the sum owed to Atlantic) was only $104,817.75, should receive roughly $156,000.00. Applying equitable considerations to these facts, it seems to us hardly a “close call,” especially considering the undisputed fact that, had the Hallcoms divulged the true state of affairs to USAA, it would have cancelled their policy, thereby eliminating their obligation to pay premiums, as well as any claim based upon that policy.
We believe that the trial court’s summary final judgment is consistent with section 627.702(3)(a), Florida Statutes (1993), and with the “other insurance” clauses contained in both policies. We believe, further, that the result reached accords with equitable considerations. Accordingly, we affirm.
AFFIRMED.
MICKLE and BENTON, JJ., concur.