197 So.2d 21 (1967)
MILLERS' MUTUAL INSURANCE ASSOCIATION OF ILLINOIS, a Foreign Corporation, Appellant,
v.
Adelaide LA POTA, Curator of the Estate of Marie I. Rada, an Incompetent, Appellee.
No. 7286.
District Court of Appeal of Florida. Second District.
March 31, 1967.
John W. Boult, of Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, for appellant.
Nelson, Beckett & Nelson, St. Petersburg, for appellee.
PIERCE, Judge.
In this case appellant Millers' Mutual Insurance Association of Illinois, a foreign corporation, defendant below, appeals a summary judgment entered in favor of appellee Adelaide La Pota, Curator of the Estate of Marie I. Rada, an incompetent, plaintiff below, awarding to plaintiff the face amount of $5,000.00 upon a fire insurance policy and allowing fees to plaintiff's attorney. Plaintiff below will hereinafter be sometimes referred to as the insured, and defendant below as the company or the insurer.
Plaintiff filed in the Pinellas County Circuit Court a complaint alleging issuance of the policy in said amount by defendant company upon a residence building owned by plaintiff and $1,000.00 fire coverage on the *22 contents therein. Plaintiff alleged total destruction by fire of the insured real property and partial destruction of the contents, and prayed judgment for the face amount of $5,000.00 on the building proper and $300.00 covering contents, plus interest and attorney's fees. Defendant company answered, admitting the basic facts as to issuance of the insurance coverage and the fire loss of the building and contents, but denied full liability as to the building loss, contending that, under a "pro rata liability" clause in the insurance contract, liability thereon should be limited to a total of $2,473.91, because plaintiff, at the time of the loss, had a fire policy in the amount of $6,500.00 on the same property with another insurance company.[1]
The "pro rata liability" clause in the policy, upon which defendant company relies, provided:
"Pro rata liability. This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."
Plaintiff contends that the above quoted clause of the policy is inoperative because it conflicts irreconcilably with, and therefore must yield to, the provisions of F.S. Sec. 627.0801(1) F.S.A., known as the "Valued Policy" law, which reads as follows:
"In event of total loss by fire or lightning of any building or structure located in this state and insured by any insurer as to such perils, in the absence of any change increasing the risk without the insurer's consent the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which premium has been charged and paid."
The company contends that the Florida appellate courts have never heretofore held that a pro rata clause such as here involved "is obnoxious or offensive to the Valued Policy law or [is] invalidated by it" and that a judicial recognition of such clause by this Court will "not defeat or frustrate the fundamental purpose of the Valued Policy law as that purpose has been stated and explained by the Courts of this state." The company asserts that the trial Judge, by entering summary judgment in favor of plaintiff, "must have concluded that the pro rata provision of the policy was invalidated by the Florida Valued Policy law," and that in so concluding the trial Judge erred. We disagree with defendant company and affirm entry of the summary judgment.
Defendant relies upon the following Florida cases to support its contention: Martin v. Sun Ins. Office of London, 1922, 83 Fla. 325, 91 So. 363; Sumlin v. Colonial Fire Underwriters, 1946, 158 Fla. 95, 27 So.2d 730; Hunter v. United States Fidelity & Guaranty Co., Fla. 1956, 86 So.2d 421; Rutherford v. Pearl Assurance Co., Fla. App. 1964, 164 So.2d 213; and Springfield Fire & Marine Ins. Co. v. Boswell, Fla.App. 1964, 167 So.2d 780. But a close analysis of these cases will reveal that they are all readily distinguishable on the facts or the decisive point of law involved, or else are actually authority to the contrary.
Thus Martin involved a controversy between the insurance company and a mortgagee of the destroyed premises and wherein was also present the question of fraud or dishonest dealing on the part of the insured owner, all of which are absent here. Furthermore, Martin is actually cited as supporting authority by 45 C.J.S. Insurance § 922c(1), page 1031 et seq., which, after first observing that fire policies "frequently provide, sometimes by reason of statute, that, if the property be covered by other or concurrent insurance, insurer shall not *23 be liable for more than its pro rata share of the loss" goes on to state that 
"[o]n the other hand, such a provision is invalid or inapplicable where there is a valued-policy statute which renders insurer liable for a total loss to the full amount of the insurance, and in such a case insured can recover on a valued policy the full amount of the policy regardless of other insurance, provided, it is sometimes held, the several concurrent policies are issued with the knowledge or consent of insurers, it is otherwise, of course, if, and to the extent that, the valued-policy statute itself provides for prorating."[2] (Emphasis supplied).
And Martin itself holds that (text 91 So. 365) 
"* * * [w]here several concurrent policies are written upon real estate the aggregate amount of all such policies is the value of the property insured, notwithstanding clauses in such policies inconsistent with the provisions of the statute. This seems to be the general rule in jurisdictions where similar statutes have been enacted." (Emphasis supplied).
The Sumlin and Hunter cases relied upon by the company are not in point. In each of these cases the fire policy in question contained the express contractual provision that any additional insurance was absolutely prohibited to the insured. Thus, such provision, being permissibly contractual as between the parties, would, if violated by the insured, vitiate the obligation of the insurer under the policy. To use the language of Mr. Justice Drew in Hunter, "the prohibition against additional insurance * * * was an express warranty by the insured that no other insurance would be taken out * * *. It was on this condition that the insurer assumed the responsibility of the insurance."
No such situation exists here, where the company admits that the policy is valid. The company does not deny liability vel non but merely contends it is not liable for the full amount of the policy. There being thus no question as to liability under the policy but only a dispute as to the amount due, the Valued Policy statute is operative and controls.
In fact, the policy involved in the case sub judice, instead of contractually prohibiting additional insurance, grants specific permission for other insurance. The policy affirmatively provides:
"Other Insurance. Other insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto."[3]
There was no such endorsement attached.
The same identical provision as to "other insurance" was contained in the fire policy involved in the Springfield Fire & Marine Ins. Co. case, and with reference thereto the 1st District Court held (text 167 So.2d 783, et seq.):
"The insurance policy in question has a clause designated `other insurance', which provides: `other insurance may be prohibited or the amount of insurance limited by endorsement attached hereto'. There is no such endorsement of limitation. Thus, there was no impediment to the obtaining of other insurance on the same premises by anyone having a proper *24 insurable interest. In addition there is specific permission granted in the policy `for other insurance'.
"The Valued Policy Law, Sec. 627.0801, Florida Statutes, F.S.A., sets the amount payable when there is a total loss. `Its principal object and purpose is to fix the measure of damages in case of loss total, or partial; and, to this end, it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write it therein.' When there are several permissible concurrent policies of fire insurance and there is a total destruction by fire of the insured premises, the aggregate amount of the insurance written, or the sum of the face amounts in the policies for this peril, is conclusive as to the value of the property insured and the true amount of the loss and measure of damages when so destroyed. Each insurer is liable for the full amount of his policy, provided, of course, there is no fraud or other conduct of the insured which would constitute a valid defense to an action to recover for the loss.
* * * * * *
"This is not an unfair scheme, as the insured is stating the limits of his recovery and at the same time the insurer is basing his premium charges on the extent of his maximum exposure. When the total loss occurs neither can contend the value of the destroyed property is any different from what they had previously specified. When multiple policies are permissible, as here, the same principles apply. The aggregate liability is the total of the various values specified and for which an appropriate premium has been paid.
* * * * * *
"We are not unmindful that overvaluation in insurance coverage has its unwholesome aspects. Perhaps it would be wise to enact laws to prevent it, but that is a matter for the legislature and not the courts. The insurers themselves have the right to prohibit or limit additional insurance on the same subject and risk. The defendant here chose not to limit but on the contrary specifically permitted additional insurance." (Emphasis supplied).
We agree fully with the 1st District Court.
The Valued Policy law, F.S. Sec. 627.0801 F.S.A., has been on the statute books of Florida since it was originally passed as Chap. 4677, General Laws of 1899. It was first held constitutional in 1904 in Hartford Fire Ins. Co. v. Redding, 1904, 47 Fla. 228, 37 So. 62, 67 L.R.A. 518. In that case the Supreme Court, after first settling the constitutional question, went further and held:
"The statute requires the insurer to fix the insurable value of the building, and to specify such value in the policy, and the measure of damages in case of total loss is fixed at the amount mentioned in the policy upon which a premium is paid. The statute does not undertake to deprive the insurer of any proper defense it may have to an action upon the policy, except in respect to the measure of damages and the authority of certain agents. Its principal object and purpose is to fix the measure of damages in case of loss total, or partial; and, to this end, it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write it therein." (Emphasis supplied).
L'Engle v. Scottish Union & National Fire Ins. Co., 1904, 48 Fla. 82, 37 So. 462, 67 L.R.A. 581, was a contemporary case to Redding. In L'Engle the fire policy in question contained a provision that 
"[t]his entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy." (Emphasis supplied).
Without the italicized portion, the provision quoted would have put the policy in *25 the category of the policies involved in Sumlin and Hunter, supra, and subject to the same contractual rule of law enunciated in those cases, namely, that additional insurance would invalidate the policy. But in L'Engle, three indorsement slips were attached to the policy, the 3rd of which contained the language: "$2,500 total concurrent insurance permitted," which the Supreme Court in L'Engle construed to extend permission for the insured to take out $2,500 additional insurance coverage. Additional insurance in said amount was taken out by the insured prior to the fire loss.
This put the policy involved in L'Engle in the same category as the policy involved in Springfield Fire & Marine, supra, and incidentally, also, the policy involved in the instant case. As applied to such facts, the Supreme Court in L'Engle construed the Valued Policy law (then Ch. 4677, General Acts of 1899), as follows (text 37 So. 466):
"This statute requires the insurer to cause the building insured to be examined by its agent, and full description thereof to be made, and the insurable value thereof to be fixed by him and written in the policy. It estops the insurer from denying that at the time of insuring the property was worth the amount of the insurable value as fixed by the agent. It fixes the measure of damages in case of total loss at the amount upon which the insured paid a premium, and in case of partial loss at such part of the amount upon which premiums are paid as the damage sustained is part of the insurable value of the building as fixed by the agent. The court fails to see that the third indorsement slip has any controlling effect in the interpretation of the one relating to permission for concurrent insurance. The insurable value is required to be fixed, not for the purposes of permitting other insurance, but for the purpose of arriving at the measure of damages in case of loss. The insurer is not permitted to deny that the property was worth the amount fixed as the insurable value, but the statute does not deprive either party of the privilege of showing that it was worth more, if such fact should become material. The insurable value is fixed with reference to the particular policy in which it is written, and not with reference to all other insurance that may be permitted upon the property. The matter of other insurance rests in contract." (Emphasis supplied).
We may go one step further. The Valued Policy law is founded upon the theory of "calculated risk," while the pro rata insurance clauses are based upon the theory of "indemnity." The Courts of this country have divided upon this question, the New York or majority rule embodying the calculated risk theory, and the Wisconsin or minority rule embodying the indemnity theory. Florida has aligned itself with the New York majority rule. Thus in Rutherford v. Pearl Assurance Co., supra, where the insured was only a mortgagee, not the owner, of the insured premises, the Court held (text 164 So.2d 214):
"The so-called Wisconsin Rule, which has apparently been recognized by a minority of courts, is essentially that a contract of fire insurance is a contract of indemnity, and, where no pecuniary loss has been sustained, there can be no recovery. The argument for this view seems to be that, to permit an insured to keep the proceeds of both the mortgage obligation and the insurance policy, offends public policy, which frowns upon placing an insured in a position to profit by a loss which he may be tempted to cause himself or be careless in failing to prevent.
* * * * * *
"The New York Rule, which we think reflects the better view and the weight of authority, is that, barring any agreement to the contrary, a fire insurance policy is a contract to insure against fire loss, and its premiums are assumed to represent the fair equivalent of the obligation contracted for by the insurer *26 without knowledge of the existence of collateral remedies."
From all the foregoing it is our view that the Circuit Judge was correct in entering summary judgment as a matter of law in favor of the insured upon the undisputed facts. The judgment is therefore 
Affirmed.
SHANNON, Acting C.J., and KELLY, CLIFTON M., Associate Judge, concur.
NOTES
[1] Said amount of $2,473.91 is arrived at by the following computation: total of both policies was $11,500, therefore the insurer claims its liability would be 5,000/11,500 x 5000 which equals $2,473.91.
[2] The provisos in the quotation from 45 C.J.S. are inapplicable here. The Florida Valued Policy statute does not provide for any prorating. And the circumstance of "knowledge or consent," if it has materiality here at all, does not alter the stated rule because defendant company never made "knowledge or consent" an issue, and if it had it would have had the burden of proof. See 46 C.J.S. Insurance § 1316b(4) and (7), pages 395 and 400.
[3] The other fire policy of the insured, the existence whereof was relied upon by the company to reduce its liability, was a 5-year coverage by the Home Insurance Company issued some 3 1/2 years before the instant policy, and contained the self-same language as to "Other Insurance."