877 So.2d 774 (2004)
Zennon MIERZWA, Appellant,
v.
FLORIDA WINDSTORM UNDERWRITING ASSOCIATION, Appellee.
No. 4D02-4996.
District Court of Appeal of Florida, Fourth District.
June 23, 2004.
Rehearing Denied August 12, 2004.
*775 Stuart R. Michelson, James J. Birch, and Ilene L. Michelson of the Law Office of Stuart R. Michelson, Fort Lauderdale, for appellant.
Dorothy C. Venable, Betsy E. Gallagher, Scott A. Cole of Cole, Scott & Kissane, P.A., Tampa, for appellee.
FARMER, C.J.
The issue in this case concerns the extent of a wind insurer's liability after Hurricane Irene. The home owner had wind insurance with one carrier and flood insurance with another. The wind insurer's policy contained an anti-concurrent cause clause excluding coverage for any damage other than by wind. A state statute requires the wind insurer to pay the face amount of the policy if the building is a total loss. The building was in fact effectually condemned by the local authority upon its determination that the cost of repairs for the total damage exceeded half the value of the building. Nevertheless the wind insurer argues, and the trial court so held, that it is liable only for its pro rata share, not for the face amount of the policy. The court also refused to award any additional sum under an "other" coverage provision. We reverse.

I. Valued Policy Law
The insuring clause of the policy provided for the repair or replacement of a damaged building up to the face amount of the policy. According to this clause, the amount of liability could be less than the face amount if the actual amount spent to repair or replace turned out to be less than policy limits. The insuring clause, however, is subject to the Valued Policy Law (VPL), which states:
"In the event of the total loss of any building ... located in this state and insured by any insurer as to a covered peril... the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy...."
§ 627.702(1), Fla. Stat. (2003). The VPL is part of every real property casualty insurance policy written on property in Florida. Citizens Ins. Co. v. Barnes, 98 Fla. 933, 124 So. 722 (1929); Regency Baptist Temple v. Ins. Co. of N. Am., 352 So.2d 1242 (Fla. 1st DCA 1977).
The meaning of the VPL is simple and straightforward. There are two essentials in the statute. The first is that the building be "insured by [an] insurer as to a [e.s.] covered peril." § 627.702(1). The second is that the building be a total loss. If these two facts are true, the VPL mandates that the carrier is liable to the owner for the face amount of the policy, no matter what other facts are involved as to the cost of repairs or replacement. That is to say, if the insurance carrier has any liability at all to the owner for a building *776 damaged by a covered peril and deemed a total loss, that liability is for the face amount of the policy. VPL § 627.702(1) ("[T]he insurer's liability, if any [e.s.] shall be [the face amount of insurance].")
The VPL statutory text does not require that a covered peril be the covered peril causing the entire loss; it need merely be a covered peril. VPL § 627.702(1) ("insured by any insurer as to a [e.s.] covered peril"). Plainly when these requisites exist, pro rata liability under the VPL would be in conflict with its terms, because the VPL provides that any liability of a casualty insurer where a covered peril is involved in a total loss must be for the face amount rather than pro rata with other coverages.[1]
We briefly flesh out the pertinent facts before we address the carrier's specific position. The owner purchased wind insurance covering his home in the face amount of $281,000 from Florida Windstorm Underwriting Association (FWUA). The FWUA policy expressly excluded flood damage. The owner also purchased separate flood insurance coverage from another insurer. The home was badly damaged by a hurricane, and claims were made under both policies.
FWUA says it decided that its liability for the wind damage repairs amounted to $64,807, plus $8,370 for debris removal, permits, and repair inspection.[2] FWUA tendered that amount, less deductibles. The flood insurer determined that the cost to repair the flood damage was $54,485. Thus, the combined cost of repairs for both wind and flood damage was $127,662. Of that combined total, wind damage represents 57%.
An ordinance where the home is located provides that "when repairs and alterations amounting to more than 50% of the value of the existing building are made during any 12 month period, the building or structure shall be made to conform [to building code rules applicable at the time of the repairs]."[3] The local building official determined that the total cost of repairs to the insured building would exceed half of its value. The record does not establish what amount the official used as the value of the building.[4] All we know *777 from the building official's calculation is that the cost of repairs were more than half of some unstated value of the building before the loss. By mathematical deduction, the value he used was undoubtedly greater than $127,663 but less than $245,324. If the value used by the building official fell anywhere between $127,663 and $146,355 (the inferential value range), then the wind damage of $73,177 was itself greater than half the value attributed to the building by the city building official.
FWUA asserts that its anti-concurrent cause clause (ACCC) excludes its liability for the face amount of the policy under VPL because the total loss was caused in part by a peril excluded under the FWUA policy. Its policy expressly excluded any coverage for flood damage. And flood damage was clearly part of the total damage. Therefore, reasons FWUA, the VPL text must give way to the ACCC. FWUA thus contends that because it is responsible for only what amounts to 57% of the damage (or more than half of the combined damage), while the rest was caused by flooding, it is liable to pay only a pro rata portion of the total damage to the home. It was this argument that the trial court relied upon in entering judgment in favor of FWUA.
There are two reasons why we do not agree with FWUA's argument. We first return to the VPL. As we have previously shown, under the VPL if a building is a total loss, and if the damaged building is "insured as to a [e.s.] covered peril," then any liability of such insurer is for the face amount of the policy. ("[T]he insurer's liability, if any, [e.s.] under the policy for such total loss shall be in the amount of money for which such property was so insured....") See Millers' Mut. Ins. Assoc. v. La Pota, 197 So.2d 21, 24 (Fla. 2d DCA 1967) ("The Valued Policy Law ... sets the amount payable when there is a total loss."). As one Court has explained:
"In cases decided under the valued policy statutes, however, the courts have uniformly held that upon a showing that the demolition was required by law the insured may recover as for a total loss. Dinneen v. American Insurance Co., etc., 98 Neb. 97, 152 N.W. 307, L.R.A.1915E, 618 [(1915)]; Palatine Insurance Co., Limited v. Nunn, 99 Miss. 493, 55 So. 44 [(1911)]; Scanlan v. Home Insurance Co., Tex.Civ.App., 79 S.W.2d 186 [(1935)]; Hart v. North British & Mercantile Ins. Co., 182 La. 551, 162 So. 177 [(1935)]. The policy provision contracting against liability for enforced demolition is held to be overridden by the statute if the loss is total by reason of such demolition."
Fidelity Guar. Ins. Co. v. Mondzelewski, 49 Del. 306, 310, 115 A.2d 697, 699 (1955).
On its face, the ACCC requires only that the liability of FWUA under the VPL be determined without consideration of the flood damage. The ACCC does not say by any words that it overrides the meaning of VPL. Because the policy is thus silent on whether FWUA's liability under the ACCC becomes merely pro rata with other coverage, or whether instead the VPL takes precedence over the ACCC, there is a conflict between the VPL text and the ACCC text. This conflict creates an ambiguity in the policy. We, of course, follow the rule that where two interpretations may fairly be given to an insurance *778 contract, that interpretation which gives the greater indemnity will prevail. State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245 (Fla.1986); Inter-Ocean Cas. Co. v. Hunt, 138 Fla. 167, 189 So. 240 (1939). Therefore resolving the ambiguity in favor of the insured owner means that we must apply the VPL as written. If FWUA has any liability at all, even a fractional share of the total damage, under the VPL it is liable for the face amount.[5]
FWUA argues that its ACCC concerns a matter of causation, not the measure of damages. But essentially it is contending that under the ACCC the measure of damages should be apportioned between the two insurance carriers issuing policies on the building. That would be contrary to the VPL. The identical contention was made by one of multiple carriers in Millers' Mutual Insurance Association v. La Pota, 197 So.2d 21 (Fla. 2d DCA 1967). In that case, the carrier had included in its policy a "pro rata" clause, limiting its liability to its fractional share of all insurance on the building. The court found this clause "inoperative" because it conflicts with the VPL. As the court explained:
"`The Valued Policy Law sets the amount payable when there is a total loss. Its principal object and purpose is to fix the measure of damages in case of loss total, or partial; and, to this end, it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write it therein.' When there are several permissible concurrent policies of fire insurance and there is a total destruction by fire of the insured premises, the Aggregate amount of the insurance written, or the sum of the face amounts in the policies for this peril, is conclusive as to the value of the property insured and the true amount of the loss and measure of damages when so destroyed. Each insurer is liable for the full amount of his policy, provided, of course, there is no fraud or other conduct of the insured which would constitute a valid defense to an action to recover for the loss....
`This is not an unfair scheme, as the insured is stating the limits of his recovery and at the same time the insurer is basing his premium charges on the extent of his maximum exposure. When the total loss occurs neither can contend the value of the destroyed property is any different from what they had previously specified. When multiple policies are permissible, as here, the same principles apply. The aggregate liability is the total of the various values specified and for which an appropriate premium has been paid.'" [e.o., c.o.]
197 So.2d at 24 (quoting Springfield Fire & Marine Ins. Co. v. Boswell, 167 So.2d 780, 783-84 (Fla. 1st DCA 1964)).
We appreciate the desire of a VPL insurance carrier to limit its liability to the single peril it has contracted to cover when multiple perils combine to make an insured building a total loss. Because of the rule construing ambiguous insurance policies in favor of the owner, however, an expressly worded provision to that effect would certainly be necessary to make such a limitation arguably possible. There is no such expressly worded limitation in this policy.
We do not intend hereby to decide whether such an attempted limitation would be permitted under the VPL. We do *779 note, however, that the VPL requires all insurers writing property casualty insurance in this state to ascertain the total value of the building and charge a premium for that value. This particular carrier is unique in that it has been created only to provide windstorm insurance. Flood insurance also is provided by such a carrier. Hurricanes commonly result in a combination of wind and flood damage in many parts of this state. Both carriers know of the VPL. If these carriers aspire to apportion total loss damages under the VPL when differing causes combine to create a total loss, they should begin that effort with express text in their policies so indicating. But such a textual addition may require governmental approval by the state agency regulating property casualty insurance in this state. When carriers do include appropriate text, a court can assess whether such a provision has the desired effect. Here we have no occasion to make that judgment because we face no such text.
Our second reason for rejecting FWUA's ACCC argument is grounded in summary judgment law. Even if the VPL allowed for pro rata liability where damages result from multiple perils, here the carrier has failed to show that the condemnation resulting from the local ordinance was not attributable solely to the wind damage. The value of a building is not an objective fact, however, unimpeachably fixed by a universally accepted authority. This condemnation ensued because the building official thought the total damage to the building exceeded half of some unstated value.
FWUA has failed to establish that the specific value used by the official was greater than twice the amount of the windstorm damage. In fact, FWUA has not even addressed the inferential value range discussed earlier. Nor has it suggested there is any evidence  e.g., testimony from the building official  showing that his value of the building was actually more than twice the windstorm damage.[6] Because FWUA has failed to make known the existence of any evidence showing that wind damage alone could not possibly have resulted in the building's condemnation, the owner was entitled to the face amount of the policy on account of the windstorm damage.

II. Ordinance or Law Coverage
In addition to the foregoing issue, the owner also claims error as to the trial court's failure to enforce the "Ordinance or Law Coverage" provision in the policy. This provision of the policy affords an additional 25% in benefits, in excess of the face amount of insurance, when the building is deemed a total loss and must be rebuilt. The purpose of this particular provision is to cover the increased costs of reconstruction caused by changes in local building codes adopted after the original construction of the building. The resolution of this claim is partially related to the decision on the VPL issue; if the building is deemed a total loss for the purpose of VPL it should certainly be deemed a total loss for purposes of this ordinance or law coverage.
FWUA argued that the additional ordinance or law coverage was excluded by the general exclusions in the policy. We disagree. The general exclusion clause makes absolutely clear that it does not apply to "other coverages." The ordinance or law coverage provision is found in the section of the policy clearly labeled "other *780 coverages." Moreover, the ordinance or law coverage provision itself states in bold letters that "This is an additional amount of insurance." [e.o.] We have no doubt therefore that the premium assessed by FWUA included this additional coverage. The owner has established beyond any question its entitlement to the additional 25% in benefits under the ordinance or law coverage.

* * *
We therefore reverse the judgment under review and remand for the entry of judgment awarding the owner the policy limits, subject to any deductions or reductions otherwise required by the policy and permitted by applicable law, along with an additional 25% of the face amount for the additional coverage.
REVERSED.
GUNTHER, J., concurs.
GROSS, J., specially concurs with opinion.
GROSS, J. concurring specially.
I concur in the majority's conclusion, but disagree in part with its reasoning.
Because this case involves the entry of summary judgment against FWUA, the insurer is entitled to the benefit of the facts in the light most favorable to its position. Using this approach, the face amount of FWUA's policy was $281,000. The total cost to repair the dwelling was $124,600, with a replacement cost value of $164,633. FWUA tendered $64,807[7] to cover damage caused by wind. The flood insurer paid $54,485 in benefits to cover damage caused by flood.
Using the replacement cost value of $164,633, wind damage amounted to 39% of the property's value, and flood damage rose to 33% of the value. Of the total damages to the property ($119,292), wind comprised about 54% and flood made up approximately 46%.
Using these figures, there is no dispute that the cost of repairs exceeded "50% of the value of the existing building" within the meaning of City of Fort Lauderdale Ordinance section 104.3(e). Application of the ordinance created a constructive total loss, because it required that the building be torn down and the site elevated.
Section 672.702(1), Florida Statutes (2003), the valued policy law, has been part of Florida law for over a century. The "principal object" of the statute
is to fix the measure of damages in case of loss total, or partial; and, to this end, it requires the insurer to ascertain the insurable value at the time of writing the policy, and to write it therein.
Hartford Fire Ins. Co. v. Redding, 47 Fla. 228, 37 So. 62, 65 (1904) (construing predecessor to section 627.702(1)). A "valued policy" statute protects "insureds faced with the total loss of their property from having to prove its value." 44 AM.JUR.2D Insurance § 1500 (2003). The statute operates like a liquidated damage clause when the insured suffers a total loss, making it unnecessary for the insured to prove the value of the loss. Another purpose of the statute is "to prohibit writing by insurance companies of excessive ... insurance coverage on property."[8]Id.
*781 The supreme court has held that an ordinance which prohibits repair of damage caused by a fire creates a constructive total loss entitling an insured to recovery of the full amount of a fire insurance policy. Citizens' Ins. Co. v. Barnes, 98 Fla. 933, 124 So. 722 (1929). Construing an ordinance similar to the one here at issue, the Florida Supreme Court wrote that "`such ordinances are a part of the contract of insurance, and that the insurer is bound thereby.'" Id. at 723 (quoting Larkin v. Glens Falls Ins. Co., 80 Minn. 527, 83 N.W. 409, 410 (1900)). Barnes established that an ordinance can convert a partial loss into a total loss for the purpose of recovery under an insurance policy.
Although Barnes did not involve the valued policy statute, Netherlands Insurance Co. v. Fowler, 181 So.2d 692 (Fla. 2d DCA 1966), is a case where the valued policy law trumped the insurance company's claim that a policy exclusion prevented an ordinance from converting a partial loss into a total one.
In Netherlands, a policy declared that the insurer would not be liable for "increased costs of repair or construction by reason of any ordinance or law regulating construction or repair." Id. at 693. A fire partially destroyed the owner's building. A building code prevented the structure's repair and the city ordered its demolition. The insurer argued that it should not be liable for a total loss because fire only partially damaged the building and that the total loss was caused by the operation of law, a risk specifically excluded by the policy. Id.
The second district rejected the insurer's argument and held that the application of the building code to the fire damage created a total loss; under the valued policy law, the insurer was liable for the face amount of the policy, notwithstanding policy language ostensibly limiting coverage. Id.; see also Regency Baptist Temple v. Ins. Co. of N. Am., 352 So.2d 1242, 1244 (Fla. 1st DCA 1977) (recognizing those cases "in which an ordinance or regulation prevents repair of a damaged building," resulting in a "constructive total loss" making the insurer "liable for the building's entire value").
This case adds a factor to the Netherlands equation. Here there is not just a covered peril that combined with the operation of an ordinance to create a total loss. The equation is [(covered risk) + (excluded risk)] × (operation of ordinance) = total loss under section 672.702(1). The ordinance would not have applied and repairs could have been made, but for the flood damages, which combined with wind damages to trigger the ordinance and create a total loss.
I agree with the majority that the valued policy law controls this case. Just as the statute overrode the policy exclusion in Netherlands, so does it overcome the anti-concurrent cause language in this case.
I disagree with the majority's holding that "if the insurance carrier has any liability *782 at all to the insured for a building damaged by a covered peril and deemed a total loss, that liability is for the face amount of the policy."
The better rule is to require that a covered peril be the proximate cause of the total loss in order to trigger the valued policy law. See Mondzelewski v. Fid. & Guar. Ins. Corp., 105 A.2d 787, 790 (Del.Super.Ct.1954), affirmed in part, reversed in part by, 115 A.2d 697, 700 (Del.1955). A proximate cause analysis does not change this case, since it is clear that but for the wind damage, the ordinance would not have been brought into play.
An example of a proximate cause analysis is Security Insurance Co. v. Rosenberg, 227 Ky. 314, 12 S.W.2d 688 (Ct.App.1928). There, the court faced the claim that a building's unsafe condition prior to a fire "subject[ed][it] to condemnation as a fire menace and dangerous habitation." Id. at 691. The court used a proximate cause analysis to determine an insurer's liability for total loss:
[I]f the injuries caused by the fire, combined with the antecedent defects, made the repairs impracticable or illegal, the insurer is liable as for a total loss. But if the condemnation was caused by conditions having no connection with the fire, the insurer is liable only for the part destroyed by the fire.
Id.; see Rutherford v. Royal Ins. Co., 12 F.2d 880, 881 (4th Cir.1926).
Finally, in reversing for the entry of judgment for the insured, I would specify that FWUA is entitled to a credit for any damages attributable to flood, an excluded peril under the windstorm policy. This gives some effect to the exclusion in the policy.
NOTES
[1] We do not consider whether a carrier who covered only one of multiple perils would be entitled to seek contribution from another carrier insuring a different peril that is also involved in the total damage. This case raises the issue only as to the liability of a carrier to the owner.
[2] FWUA treats the $8,370 for debris removal, governmental permits and governmental inspection of repairs for compliance with building codes as outside of the cost of repairs, but without showing any reason therefor. We find no basis in the record to segregate such expenses from the total cost of repairs. They are reasonably and directly related to the repair of the damage and would not have been incurred but for the wind damage. We thus conclude that such costs are properly contained within the total cost of repairs.
[3] Ordinance section 104.3(e) of the City of Fort Lauderdale provides:

"When repairs and alterations amounting to more than 50% of the value of the existing building are made during any 12 month period, the building or structure shall be made to conform...."
Making the building conform to current construction requirements of the city means that in fact it must be torn down and the site elevated. Thus by application of the Building Code the home had to be demolished because the total damage was greater than half its value. Both sides essentially accept the proposition that by operation of local law the building is a total loss.
[4] Ordinance section 104.5 of the City of Fort Lauderdale provides:

"the value of a building or structure shall be the estimated cost of constructing a new building of like size, design and materials at the site of the original structure, assuming such site to be clear and deducting therefrom an amount for depreciation, deterioration and damage before such proposed new construction is started."
We presume that the building official used this section 104.5 formula to reach an estimated value and thereby determined that the combined cost to repair of $127,662 is greater than half of whatever value amount he had arrived at.
[5] Here of course, FWUA's fractional share is greater than half of the total damage. It covers the largest share of damage. We thus have no occasion to consider the "parade of horribles" suggested by FWUA when its covered peril might be responsible for, say, only 1% of the total damage.
[6] To the contrary, the record contains evidence emanating from plaintiff's adjustor to the effect that the cost of repairs for wind damage alone was more than half the value used by the building official and therefore that apportionment was "moot".
[7] I do not agree with the majority that we should include in the damage figure the $8,370 for debris removal, governmental permits, and repair inspection. Such costs do not amount to "repairs or alterations" within the meaning of City of Fort Lauderdale Ordinance section 104.3(e).
[8] One court has described the state of affairs that led to the passage of valued policy statutes:

Patterson, Essentials of Insurance Laws, s 32, p. 118, attributes the passage of valued policy statutes to the indifference of insurance agents to the amount of insurance which their customers needed; to the fact that agents received larger commissions by selling the insured needless protection; and to the fact that the honest insured paid unnecessary premiums and the dishonest insured was tempted to commit arson. But even so, according to Patterson, the insurance companies found it more economical to pay excessive claims than to make an appraisal of every property insured. Thus, the purpose of valued policy statutes is twofold: (1) To prevent overinsurance by requiring prior valuation; and (2) to avoid litigation by prescribing definite standards of recovery in case of total loss.
Nathan v. St. Paul Mut. Ins. Co., 243 Minn. 430, 68 N.W.2d 385, 388 (1955) (citations omitted).