PER CURIAM.
Citizens Property Insurance Corporation (Citizens) appeals a final judgment requiring it to pay Appellee Herbert J. Ashe $109,729.48 under the windstorm insurance policy issued by Citizens for damages to the Ashe’s home caused by Hurricane Ivan in September 2004. In arriving at the amount of damages, the trial court based its ruling on the “Other Insurance” clause in the Citizens policy. Both parties contend, and we agree, that application of the “Other Insurance” clause in the Citizens policy was erroneous.
Citizens also argues that the trial court erred in denying summary judgment un *647 der the so-called “total loss recovery rule,” asserting that Ashe was fully compensated for his loss with payment of the policy limits under his flood policy and the partial payment under the wind policy. For the reasons that follow, we reject Citizens’ contention that the total loss recovery rule applies here.
Finally, Citizens contends that the trial court erred in granting Ashe’s motion in limine and excluding the introduction of evidence that Ashe’s home was covered by flood insurance and that Ashe recovered $225,200 in proceeds from his flood insurance policy. For the reasons explained below, we agree in part, and reverse the trial court’s order granting Ashe’s motion in limine except with respect to the amount of insurance proceeds Ashe received.
On cross-appeal, Ashe contends that the trial court erred by precluding him from submitting to the jury a claim that wind caused a total loss to his insured property under Florida’s Valued Policy Law (VPL), section 627.702, Florida Statutes (2004). We find that the trial court erred in ruling that Ashe could not submit to the jury a claim that wind caused a total loss. As noted, however, Citizens is entitled to introduce evidence and argument that Ashe successfully sought recovery under his flood insurance.
Accordingly, the final judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Factual and Procedural Background

Ashe’s Pensacola residence was constructed on pilings; the ground level included a garage and storage area, and the upper level had breakaway walls and contained the living spaces. The home was completely destroyed by Hurricane Ivan on September 16, 2004, with nothing remaining but the pilings.
Ashe had insured the home with a Citizens wind-only insurance policy with limits of $188,000. Citizens is a governmental entity created under section 627.351(6), Florida Statutes (2004), to provide insurance for residential and commercial property for property owners who are unable to procure insurance through the private insurance marketplace.
Because the Citizens policy expressly excludes flood damage, Ashe had also obtained a separate flood insurance policy on the home through the National Flood Insurance Program (NFIP), which was issued through United Service Automobile Association (USAA) with policy limits of $225,200.
Citizens and USAA used the same adjuster. The adjuster inspected the property and determined that the actual cash value of the house was $238,720 and the total replacement cost value was $258,716.51. Once the replacement cost was determined, after deducting depreciation of $30,000 and the $500 deductible under the flood policy, the adjuster found the actual cash value of the total loss to be $228,216.51.[1] As found by the trial court and undisputed by the parties, Ashe “received payment of the full policy amount of $225,200 from the flood carrier, although [Ashe] never executed or submitted to the flood carrier a Proof of Loss form. [Ashe] accepted the payment from the flood carrier and endorsed the check for the benefits.”
*648 The adjuster also estimated that wind caused damage of $30,580.32 to the home. Citizens paid Ashe $26,770.32, which is the adjuster’s estimate less the deductible provided in the Citizens wind-only policy. Thus, in total, Ashe was paid $251,970.
Ashe asserted below that the home was a total loss because of wind damage and that the evidence would establish that it was blown from its pilings prior to any storm surge. He contended that he was entitled to recover a total loss under his wind-only VPL policy. Citizens disagreed that Ashe was entitled to any further payment. This action ensued.
Section 627.702(1) provides in pertinent part that “[i]n the event of the total loss of any building ... insured by any insurer as to a covered peril, ... the insurer’s liability under the policy for such total loss, if caused by a covered peril, shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.”[2] The trial court granted summary judgment for Ashe on the authority of Mierzwa v. Florida Windstorm Underwriting Association, 877 So.2d 774 (Fla. 4th DCA 2004); subsequent to the entry of final summary judgment, however, Mierz-wa was disapproved in Florida Farm Bureau Casualty Insurance Co. v. Cox, 967 So.2d 815 (Fla.2007). On appeal of the summary judgment, this court reversed, citing Cox. See Citizens Property Ins. Co. v. Ashe, 967 So.2d 420 (Fla. 1st DCA 2007).
In Cox, the supreme court held that when the total loss is caused by the combination of covered and non-covered perils, the VPL does not apply. As this court recently explained in Florida Farm Bureau Casualty Insurance Co. v. Mathis:
In Cox, the Florida Supreme Court ruled that section 627.702(1), Florida Statutes (2004) was ‘intended only to set the value of the property insured by the policy in order to conclusively establish the property’s value when there is a total loss.’ 967 So.2d at 819. In short, the VPL is simply a valuation statute. Id. - The court ruled that under the statute, ‘an insurer is liable for a loss by a peril covered under the policy for which a premium has been paid.’ Id. at 820. The Court in Cox rejected the Fourth District Court of Appeal’s decision in Mierzwa ...., explaining:
‘In Mierzwa, as here, the insured property was damaged by a combination of wind and water in a hurricane. The insurer asserted that it was responsible for the percentage of the total loss attributable to wind. The insurer did not contest the total value *649 of the property. We find that the Fourth District misconstrued the VPL in holding that ‘if the insurance carrier has any liability at all to the owner for a building damaged by a covered peril and deemed a total loss, that liability is for the face amount of the policy.’ Mierzwa, 877 So.2d at 775-76.’
Id. at 821. Importantly, the Court expressly limited its holding ‘to only those cases in which a covered peril did not cause a total loss or constructive total loss.’ Id. n. 6 (emphasis added).
33 So.3d 94, 97 (Fla. 1st DCA 2010) (emphasis in original).
On remand, the case was set for trial. Ashe filed a motion in limine asking the court to exclude any reference to flood insurance coverage or payments made by the flood insurer. Ashe argued that the flood insurance adjuster’s estimate and the amount he was paid was irrelevant and immaterial because the issues to be tried were the amount of wind damage and whether the wind caused a total loss. Although he acknowledged that Citizens could defend by introducing evidence that flood waters caused some or all of the damage, Ashe contended that the existence or nonexistence of a flood insurance policy did not tend to prove a material fact that would assist the jury in determining the issues. He argued that evidence concerning other insurance would be confusing, inflammatory, and highly prejudicial. The trial court granted the motion in limine.
Citizens filed a motion for summary judgment based upon the total loss recovery rule applied in other jurisdictions. Under this rule, when an insured has coverage under both a flood policy and a wind policy, the insured’s recovery is limited to the total amount of flood and wind insurance coverage, or to the pre-storm value of the structure, whichever is less. Citizens argued that after Ashe was paid the full flood policy limits by USAA and the wind payment from Citizens, under the total loss recovery rule, Ashe had been paid more than the pre-storm value of the house and was not entitled to any further recovery. The trial court denied Citizens’ motion.
After the jury was chosen, the court announced its intention to apply the “Other Insurance” clause in the Citizens policy. That clause provides:
11. Other Insurance
a. If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the Limit of Liability that applies under this policy bears to the total amount of insurance covering the loss.
Neither Ashe nor Citizens argued that the Other Insurance clause applied, and both parties objected to the trial court’s ruling.
Applying this clause, the trial court announced that Ashe would be entitled to recover from Citizens 45.5% of the pre-storm value of the house. The court determined the percentage by calculating the proportion of the Citizens policy limits to the total amount of wind and flood limits of $413,200. The court divided the $188,000 wind limit by the total wind and flood limits of $413,200 to reach a percentage of 45.5%. The court indicated that the only question to be determined was the pre-storm actual cash value of the house. The court found that Citizens was required to pay 45.5% of whatever the jury determined was the pre-storm value of the house. In addition, the trial court announced its agreement with the total loss recovery rule and stated that, but for application of the “Other Insurance” clause, it would have applied that rule.
After the trial court announced its intention to apply the “Other Insurance” clause, *650 the parties stipulated, solely for purposes of the application of that clause, that the pre-storm value of the house was $800,000. Both parties reserved the right to present evidence to the contrary regarding the pre-storm value if this court determined that the trial court erred in applying the “Other Insurance” clause. Thereafter, the trial court entered an order conforming to its oral ruling and determining that Ashe was entitled to recover from Citizens the sum of $109,729.48, together with prejudgment interest, for a total of $154,694.96.

The “Other Insurance” Clause

Interpretation of the provisions of an insurance policy is reviewed de novo. Barnier v. Rainey, 890 So.2d 357, 859 (Fla. 1st DCA 2004). As stated, the Citizens policy provides that the “Other Insurance” clause applies only “[i]f a loss covered by this policy is also covered by other insur-ance_” The Citizens policy also expressly excludes a loss due to “[fjlood, surface water, waves, tidal water, storm surge, wave rush, or tidal wave.... ” In bold-faced type, the policy states:
“THIS IS A POLICY LIMITED TO HURRICANE, OTHER WINDSTORM OR HAIL. IT DOES NOT PROVIDE FLOOD, STORM SURGE OR WAVE WASH COVERAGE. CONSULT YOUR AGENT FOR AVAILABILITY OF FLOOD COVERAGE.”
In American Fire & Casualty Company of Orlando, Florida v. Marathon Aviation Marathon, Inc., 196 So.2d 782, 783 (Fla. 2d DCA 1967), the court explained that “other insurance” exclusions “are applicable when two or more insurance policies are on the same subject matter, risk and interest. The reason for said exclusionary clauses is to avoid double collection, and thereby discourage fraud.” (Citations omitted.) We agree with the parties that the purpose of Citizens’ “Other Insurance” provision is to address the situation where an insured has multiple polices that insure the same risk; for example, a wind policy of $200,000 with one carrier and a second $200,000 wind policy with another carrier. It is not applicable when the insured has a wind policy and a flood policy, each covering a different peril.
In reaching its decision, the trial court reasoned that
pursuant to the contract, where the loss is a total loss of the structure and the loss has been caused by the effects of two perils insured under separate policies, Citizens is responsible for the pro rata share that its coverage bears to the combined limits of coverage.
Nothing in the insurance policy, however, supports requiring Citizens to pay for actual wind damage in the event of partial loss, but only a pro rata amount of the total wind damage in the event of a total loss. Under its policy, Citizens is obligated to pay for damage “solely attributable to wind.” See Citizens Property Ins. Corp. v. Mallett, 7 So.3d 552, 555 (Fla. 1st DCA 2009). Further, the trial court’s ruling erroneously precluded Ashe from introducing evidence seeking to prove that the wind caused the total loss to the insured’s property before the storm surge arrived, thereby triggering the VPL.
Although our holding on the erroneous application of the “Other Insurance” clause is dispositive, we address the remaining issues raised on appeal to assist the trial court and the parties on remand. See Sturdivan v. State, 419 So.2d 300, 301 (Fla.1982).

Total Loss Recovery Rule

Citizens contends that the trial court erred in refusing to grant summary judgment under the total loss recovery rule because Ashe had been fully compensated for his loss. The total loss recovery rule limits the insured to recover the less *651 er of either the pre-storm value of the insured property or the total policy limit for perils that led to the property’s destruction. In support of its argument, Citizens relies upon unreported federal court decisions applying Louisiana and Mississippi law.[3] See Webster v. State Farm Fire & Cas. Ins. Co., 2008 WL 2080907 (E.D.La. May 14, 2008); Dickinson v. Nationwide Mut. Fire Ins. Co., 2008 WL 941783 (S.D.Miss. April 4, 2008); Robichaux v. Nationwide Mut. Ins. Co., 2007 WL 2783325 (S.D.Miss. September 21, 2007); Letoha v. Nationwide Ins. Co., 2007 WL 2059991 (S.D.Miss. July 12, 2007); Ruiz v. State Farm Fire & Cas. Co., 2007 WL 1514015 (S.D.Miss. May 21, 2007); Esposito v. Allstate Ins. Co., 2007 WL 1125761 (E.D.La. April 16, 2007); Weiss v. Allstate Ins. Co., 2007 WL 891869 (E.D.La. March 21, 2007). Citizens argues that the total loss recovery rule is consistent with the principle that an insurance contract is a contract of indemnity, and an insured should be compensated only for losses suffered. See, e.g., DeCespedes v. Prudence Mut. Cas. Co. of Chicago, Ill., 193 So.2d 224, 226 (Fla. 3d DCA 1966) (explaining that, under the principle of indemnity, restitution for the insured’s loss is the keystone).
In response, Ashe argues that while insurance policies generally are indemnity contracts, the VPL is an exception and is based on “calculated risk” rather than principles of indemnity. Millers’ Mut. Ins. Ass’n of Ill. v. La Pota, 197 So.2d 21, 25 (Fla. 2d DCA 1967). A calculated risk value policy is present when “parties ... ascertain and agree in advance what the value is and in the case of total loss by the insured peril this amount shall be paid as liquidated damages.” Springfield Fire & Marine Ins. Co. v. Boswell, 167 So.2d 780, 784 (Fla. 1st DCA 1964). Ashe cites numerous Florida decisions in which a double recovery was allowed under the VPL. See, e.g., Cooper v. Alford, 446 So.2d 1093 (Fla. 1st DCA 1984); La Pota; Boswell. Ashe distinguishes the cases applying Louisiana and Mississippi law, arguing that Louisiana and Mississippi are indemnity states adhering to the rule that under an indemnity contract, an insured cannot recover an amount greater than his actual loss. Ashe contends that, unlike the law applicable in Louisiana and Mississippi, the VPL provides for the insured to recover the agreed amount of insurance when there is a total loss due to a covered peril. Cox, 967 So.2d at 820. Finally, Ashe cites Miles v. AAA Insurance Company, 771 So.2d 607, 609 (Fla. 3d DCA 2000), in which the Third District explained, “Their pretrial settlement with their flood insurer does not preclude them from claiming that they suffered as much or more damage from the perils covered by the homeowner’s policy they obtained through AAA, and in no way supports a theory of judicial estoppel or fraud on the court.”
Although we agree that a VPL policy is a “calculated risk” policy, the supreme court’s decision in Cox now establishes that indemnity principles are not abandoned in VPL cases. Specifically, the court determined that the VPL establishes the value of the property when there is a total loss, but it does not impose liability on the insurer for a loss caused by an uncovered peril for which no premium has been paid. Cox, 967 So.2d at 820. While the insurer cannot contest the value of the property, the insurer can contest “whether it is liable for the entire loss when the *652 covered peril alone did not cause a total loss but was only responsible for a relatively small amount of the damage.” Id. at 821. The court recognized, however, that the VPL applies if a covered peril causes a total loss or constructive total loss. Id. at n. 6. Thus, Ashe is correct that if he is able to prove that wind alone caused a total loss before the storm surge arrived, despite his successful recovery of flood insurance payments, the VPL would require Citizens to pay the policy proceeds. Thus, we find no error in the trial court’s denial of Citizens’ motion for summary judgment.
Citizens argues that Ashe will receive a windfall, or double recovery, if the jury concludes that wind caused a total loss to his home. We are not persuaded, however, that applying these principles will result in Ashe obtaining a windfall in the event he succeeds in convincing the jury that wind caused the total loss of his property. Although we do not address the issue of subrogation here because it was not raised below, we note that by federal regulation, all NFIP policies contain a sub-rogation clause, which provides in pertinent part:
Whenever we make a payment for a loss under this policy, we are subrogated to your right to recover for that loss from any other person. That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us to the extent that we have paid you for the loss.... If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of the money.
44 C.F.R. 61.13, App. A(l) subsection (VIIXS) (2002); see also Bradley v. Allstate Ins. Co., 606 F.3d 215 (5th Cir.2010) (noting the existence of this subrogation provision in discussing whether the insured or the insurer should receive a potential windfall from an overpayment by the flood policy).

Evidence of Flood Insurance Payments

Citizens contends that the trial court erred in granting Ashe’s motion in limine and excluding essentially all evidence of Ashe’s demand for flood insurance payments for the purported flood damage caused to his home, and that his demand resulted in his receiving $225,200 in flood policy benefits. We agree except as to the amount of benefits received.
Ashe admits that the extent of flood damage to his home, along with other meteorological and scientific evidence relating to the wind and storm surge, are relevant. He argues, however, that evidence concerning the existence of flood insurance or the amount of money he received from his flood insurance carrier is irrelevant because that evidence does not tend to prove or disprove any material fact. Further, Ashe contends that receipt of flood insurance policy benefits is inadmissible under the collateral source rule, which allows the injured party to recover the full amount of damages from the wrongdoer, irrespective of any funds the injured party may be entitled to from independent sources.
Relevant evidence is evidence “tending to prove or disprove a material fact.” § 90.401, Fla. Stat. “All relevant evidence is admissible, except as provided by law.” § 90.402, Fla. Stat. (emphasis added); Gibson v. Metropolitan Life Ins. Co., 381 So.2d 376 (Fla. 1st DCA 1980) (no error in permitting cross examination of plaintiff regarding her rehabilitation attempts, as the evidence was relevant to the question of whether she was disabled). Evidence that such flood insurance benefits were received was relevant to the issue of whether flood or wind caused the total loss of the home, and the trial court *653 abused its discretion in excluding such evidence. Where Ashe now claims that his house was totally destroyed by wind, the jury can and should be allowed to hear evidence that he sought and accepted payment from his flood insurer, which by contract only provided compensation in the event of losses from a flood peril. In fact, to hold otherwise would contradict the thrust of the holding in Cox, in which the supreme court made it clear that a YPL insurer is not required to pay for damages caused by “excluded or noncovered perils.” 967 So.2d at 820. Ashe accepted the payment of his flood insurance policy, thus acknowledging that he was entitled to the payment because his home was damaged, or perhaps completely destroyed, by flood waters.
Furthermore, Ashe’s argument is not persuasive that the evidence of his receipt of the flood insurance payment is inadmissible under the collateral source rule. There is no reason in law to exclude the evidence that Ashe asked for the full policy limits from his flood insurer. In fact, in Citizens Property Insurance Corporation v. Hamilton, 43 So.3d 746 (Fla. 1st DCA 2010), this court found no error under the collateral source rule where the trial court allowed extensive evidence regarding the homeowner’s application for flood insurance benefits, including the homeowner’s claim that his entire loss was due to flood and other actions taken by the flood insurer adjuster, but excluded evidence of the amount of the payment. Furthermore, the homeowner did not challenge the admission of the evidence of the flood insurance policy or the documentation accompanying the claim; rather, the homeowner’s motion in limine addressed only “evidence of the amount of flood carrier payments and estimates.” Id. at 750. The trial court’s ruling on the motion allowed Citizens “to reference the flood coverage, the flood damage, and the flood loss claim, except as to dollar amount.” Id.
In the appeal of that ruling, Citizens “contends that these representations [regarding the flood coverage, the flood damage, and the flood loss claim], in addition to a letter from trial counsel acknowledging full payment of the [insureds’] ‘total loss’ flood claim, are admissible as statements against interest, pursuant to section 90.803(18), Florida Statutes (2003).” Id. at 751. The insureds countered that “such evidence is irrelevant and barred by the common law collateral source rule.” Id. After discussing this court’s prior application of the collateral source rule to contract actions, this court noted that “the common law collateral source rule militates against evidence of the dollar amount of flood insurance payments, disbursed by an entity wholly independent of appellant, under a plainly distinct contractual obligation, and paid for entirely by premiums remitted by [the insured].” Id. (emphasis added). Consequently, this court affirmed the trial court’s ruling excluding evidence of the amount the insureds received from their flood insurance policy. Id.
By contrast, the trial court here issued a blanket order excluding all references to Ashe’s request for and receipt of the full benefits of his flood insurance, even though he seeks the full benefits of his wind insurance. Clearly, it is relevant to the fact finder to know that Ashe reported to one insurer that flood caused all the damage to his home, and now claims that wind caused all the damage to his home. Consequently, the trial court erred in excluding this evidence except with respect to the amount of benefits received.
Our decision in Rease v. Anheuser-Busch, Inc., 644 So.2d 1383 (Fla. 1st DCA 1994), also supports our rationale. In Rease, this court held that the trial court correctly admitted evidence of a plaintiffs *654 worker compensation benefits in her suit for wrongful retaliation against her employer:
We hold that the collateral source rule does not apply here because the fact of Rease’s receipt of benefits was relevant to the issue of Anheuser-Busch’s liability.... Exclusion of the evidence of her receipt of benefits would have prevented Anheuser-Busch from defending itself against Rease’s claim of economic coercion. If this evidence was prejudicial, it was prejudicial only in the sense that it contradicted Rease’s allegations of intimidation and coercion. Given the relevancy of the evidence here, this case is distinguishable from those wherein the evidence was held to be immaterial and misleading and a subversion of the jury process. See e.g., Gormley v. GTE Products Corp., 587 So.2d 455 (Fla.1991).
644 So.2d at 1387 (emphasis added).
Appellant cites footnote 3 in the Rease opinion in support of his argument. There, however, this court simply acknowledged that, as a “general proposition,” the collateral source rule functions as a rule of damages, but the fact that the rule bars admission of evidence of collateral payments is not relevant where it can mislead the jury on the issue of liability. Rease, 644 So.2d at 1387 n. 3. However, Rease also stands for the proposition that evidence of the receipt of payments from another source can be relevant where the evidence rebuts a party’s theory of the case.
Here, as in Rease, excluding evidence of Ashe’s receipt of flood insurance payments would limit Citizens from its defense that Ashe’s home was destroyed by flood, not wind. The fact that both Ashe and his flood insurer determined the cause was flood is relevant. Evidence of the monetary amount Ashe received from his flood policy is relevant to show the extent of his home’s damage, should the jury decide that the flood insurance only compensated Ashe for a portion of the total damages incurred by both flood and wind.
As we noted in Hamilton, we are constrained by precedent to apply the collateral source rule to contract actions, and not to only tort actions. We note that the Hamilton court also cited footnote 3 in Rease, explaining that the case provides that in either a tort or contract action, total or partial compensation received by a plaintiff from a collateral source wholly independent of the defendant wrongdoer will not operate to lessen the damages otherwise due. 43 So.3d at 751. As noted in Hamilton, that footnote cites to the Third District’s opinion in Hartnett v. Riveron, 361 So.2d 749 (Fla. 3d DCA 1978). In Hartnett, the Third District held that evidence that the Florida Insurance Guaranty Association paid the plaintiffs claim in full was not barred by the collateral source rule on the issue of damages. Id. at 750-51.
Subsequent to Riveron, in City of Miami Beach v. Carner, 579 So.2d 248, 253-54 (Fla. 3d DCA 1991), the Third District stated, “It has been held that the collateral source rule does not apply to pure breach of contract cases.” There, the appellee cited in support of its collateral source argument Bangert v. Beeler, 470 So.2d 817 (Fla. 1st DCA 1985), and Walker v. Hilliard, 329 So.2d 44 (Fla. 1st DCA 1976), both of which were also cited in Hamilton when acknowledging our contrary precedent. The Third District found these cases were distinguishable, explaining:
Bangert and Walker, also relied on by [appellee] are equally unconvincing since they both involved insurers and the possibility of subrogation as set out in section 768.76, Florida Statutes (1989), *655 dealing with use of the collateral source rule in negligence cases.
City of Miami Beach, 579 So.2d at 254 (full citations omitted). The court also noted that Hartnett was “unavailing” because “the statement therein on use of the collateral source rule was clearly dicta.” Id. It seems to us that the better view is that the collateral source rule should not apply in pure contract actions. We suggest it may be time to revisit this issue.
Finally, Ashe’s argument that evidence of his request for flood insurance benefits is inadmissible under section 90.408, Florida Statutes, also fails, as that statute prohibits consideration of evidence of compromise or settlement, and Ashe’s application for his flood policy limits was not a settlement offer. The statute only excludes evidence of settlement discussions between Ashe and Citizens, not Ashe and his flood insurer. Ritter v. Ritter, 690 So.2d 1372, 1376 (Fla. 2d DCA 1997). Furthermore, Ashe presented no evidence that his receipt of flood insurance proceeds was the result of a compromise or settlement negotiation, rather than simply a payment of insurance benefits. For this court to accept his argument here, every payment of insurance benefits would constitute a settlement rather than simply fulfilling a contractual duty.

CONCLUSION

For the foregoing reasons, we REVERSE the trial court’s application of the “Other Insurance” clause in the Citizens insurance policy. We AFFIRM the trial court’s denial of Citizens’ motion for summary judgment. We REVERSE the trial court’s ruling on Ashe’s motion in limine excluding the introduction of evidence that Ashe’s home was covered by flood insurance and that he received proceeds from his flood insurance policy, except as to the court’s ruling excluding evidence of the amount recovered.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.
HAWKES, C.J. and THOMAS, J., concur.
VAN NORTWICK, J., concurs in part and dissents in part with opinion.

. Because NFIP policies covering flood insurance are not VPL policies, loss for purposes of payment under NFIP policies is computed differently than under a VPL policy. See Monistere v. State Farm Fire & Cas. Co., 559 F.3d 390 (5th Cir.2009) (holding that constructive total loss doctrine does not apply to NFIP policies).

. Although the legislature amended section 627.702(1) in 2005, the parties agree the 2004 statute is applicable to these facts. Under the 2005 version of section 627.702(l)(b), the insurer would not be liable for more than the amount necessary to repair, rebuild or replace a structure following a total loss after considering all other benefits actually paid for the loss. Specifically, the 2005 statute provides:
(b) The intent of this subsection is not to deprive an insurer of any proper defense under the policy, to create new or additional coverage under the policy, or to require an insurer to pay for a loss caused by a peril other than the covered peril. In furtherance of such legislative intent, when a loss was caused in part by a covered peril and in part by a noncovered peril, paragraph (a) [providing for payment of policy proceeds in the event of a total loss caused by a covered peril] does not apply. In such circumstances, the insurer’s liability under this section shall be limited to the amount of the loss caused by the covered peril. However, if the covered perils alone would have caused the total loss, paragraph (a) shall apply. The insurer is never liable for more than the amount necessary to repair, rebuild, or replace the structure following the total loss, after considering all other benefits actually paid for the total loss.

. Unreported decisions do not have prece-dential value. U.S. v. Cromer, 389 F.3d 662, 682 n. 13 (C.A.6 2004).